Weldon, J.,
delivered the opinion of the court:
In this case the decedent ivas the owner of certain land in the State of Pennsylvania. Claimant is seeking remuneration for the use and occupation of such land, which ivas used by the United States as a military camp from the 28th day of September, 1898, to the 11th day of the following November. The land ivas, during the occupation of the United States, in the possession of a tenant whose term expired on the 4th day of April, 1899. The theory of the claimant is, that the United States took and appropriated the property of the decedent in the exercise of the right of eminent domain without having made compensation therefor.
It is contended that when the defendants took possession of the land an implied contract arose not only to pay a reasonable rental for the occupation of the property, but to restore it in the same condition in which it was when first occupied, except for such ordinary wear and tear as is compensated by rent, and that the jurisdiction rests upon the Tucker Act. (1 Supp. It. S., 559.)
To this theory the defendants reply that there was no taking of property within the meaning of the Constitution, and whatever loss or damage the decedent suffered was by the way of consequential damages, and that for such a grievance there is no jurisdiction in this court, the case sounding in tort.
The findings show that the decedent was the owner of the land in fee at the time the United States took possession; that no person, neither the decedent nor the tenant, made any objection to the defendants taking possession of the land for the purpose of a military camp; that no effort was made by decedent or the tenant to resume possession of the land during the occupation of the United States; that the defendants did not claim any title, to the land, but entered in' pursuance to their right in the exercise of the right of eminent domain;' *392 that no compensation has been paid to the claimant or decedent ; that compensation was made to the tenant for the use of the premises, but nothing was allowed him for any damages done during the occupation of the United States.
The legal right of the decedent is complicated by the fact that he was a reversioner subject to the subsisting particular estate of his tenant, and that the occupation of the United States was as to mere occupancy in derogation of the rights of the tenant of the particular estate knd not the reversioner.
In the maintenance of the jurisdiction of the court, counsel have cited many decisions of the Supreme and this court, insisting that upon the authority of those decisions the jurisdiction of the court and the right of recovery on the part of the plaintiff are fully established. In the case of Dooley v. The United States (182 U. S., 222) it is said in reference to the Tucker Act:
“ The first section evidently contemplates four distinct classes of cases: (1) Those founded upon the Constitution or any law of Congress, with an exception of pension cases; (2) cases founded upon a regulation of an executive department; (3) cases of contract, express or implied, with the Government; (4) actions for damages, liquidated or unliqui-dated, in cases not sounding in tort.. The words ‘ not sounding in tort ’ are in terms referable only to the fourth class of cases.”
It is contended that this case falls within three of the jurisdictional provisions — it is a claim founded on the Constitution ; it is a case of implied contract; and it is a case for unliquidated damages not sounding in tort.
The case of Grant v. The United States (1 C. Cls. R., 41) and the case of Wiggins v. The United States (3 C. Cls. R., 412) are cited as sustaining the doctrine of the law upon which the claimant predicates her right to recover in this proceeding.
In the case of Merriam v. United States (29 C. Cls. R., 250) it is said:
“ The right of eminent domain being recognized by the supreme law of the land, it ivould involve a contradiction to hold that in the exercise of that there can exist the legal elements of a wrong.
*393 “ In the civil economy of political society whatever is legal is right; being right in legal contemplation it excludes from the transaction to which it is properly applied all wrong, and therefore all tort.
“ The taking of private property without the consent of the owner on the part of an individual is wrong per se; but not necessarily so upon the part of the Government, as it has the constitutional right to take private property against the will of the owner, subject to the condition of paying for it. Individuals hold their property,subject to the wants and necessities of the public, and if in the exercise of the right of eminent domain the public approjDriate such property, a compensation in value is the only redress due the owner.”
Substantially the same principle is announced in the case of Pope v. United States (26 C. Cls. R., 14) :
“ Every person who acquires property in this country, real or personal, in effect subscribes to an agreement to hold it subject to the right of the Government to take it for public use on the payment of just compensation. All property is held on this condition, whether it be the most tangible known to the law, real property, or the most intangible, the patented mind work of the inventor. There is no action of trespass against the Government for the one nor of infringement for the other.”
In the case of United States v. Great Falls Manufacturing Company (112 U. S., 646) it is, in substance, stated that the law will imply a promise to pay where property taken for the use of the United States is private property to which the United States asserts no title, and for such a taking there is jurisdiction in the Court of Claims to adjudicate and determine the measure of compensation.
This property was taken and appropriated for the time being as private pi’operty, without any objection from either the holder of the particular estate or the reversioner. The United States had the constitutional right to appropriate the property as it did upon the condition that they would pay for it.
This case is somewhat complicated by the fact that the taking, so far as the same interfered with the occupancy of the land, was not strictly in derogation of the rights of the reversioner, the land being at the time of the appropriation in possession of the tenant, whose term did not expire until *394 after the use bjr the United States had ceased and the damage to the reversioner.
In reply to that argument it may be said the property right' of the reversioner was taken to the extent that the land had been diverted from the kind of use and occupation contemplated by the tenancy, in having been rented for agricultural purposes, and by the act of defendants used for military purposes beyond and different from the contemplated purpose of its use by the tenant.
The defendants were not trespassers as to the rights of the tenant or decedent. There was no tort or wrong in the acts of the United States. It ivas a peaceable appropriation of the land for a legitimate purpose and use, against which no objection ivas made either by the tenant or landlord.
The defendants took it in pursuance of a right which was acknowledged and recognized by the owners, and by their consent.
Can a transaction be said as “ sounding in tort ” where all parties in interest agree to and acquiesce in the act of the taking? The findings show that no objection was made by any persons, but all agreed to what was done.
The decedent in this proceeding had the fee-simple title— the highest estate which can be held in land, but subservient to the paramount right of the Government to take it for public use, upon the condition that compensation be made to him for its use, or its value. The estate of the tenant was limited in time and use, and beyond that all belonged to the decedent. That estate was the reversion of the land with all the incidents of the estate, except what might arise from the use and occupation of the land during the term of the lease.
The value of that estate was taken to the extent that the extraordinary use by the defendants impaired its value, and from which the defendants derived a substantial benefit in the use and .occupation of the land for military purposes.
It is said by the defendants that if the court has jurisdiction in this case it must arise from the taking of the property of the claimant in the exercise of the right of eminent domain, or it must arise from a contract made by the decedent and the defendants, for the breach of which damages are *395 recoverable. And it is insisted that the circumstances under which the land was taken are not sufficient to establish a taking in the exercise of eminent domain and that there is no pretense that any contract wras made as to the use and occupation of the premises.
In support of such contention the case of the United States v. Pacific R. R. Co. (120 U. S., 227) is cited as sustaining such contention:
“ In what we have said about the exemption of Government from liability for private property injured or destroyed during war by the operations of armies in the field, or by measures necessary for their safety and efficiency, we do not mean to include claims where the property of loyal citizens is taken for the service of our Army, such as vessels, steamboats, and the like, for the transportation of troops and munitions of war, or buildings to be used as storehouses and places of deposit for war material or to house soldiers or take care of the sick, or claims for supplies seized and appropriated. In such cases it has been the practice of the Government to make compensation for the property .taken. Its obligation to do so is supposed to rest upon the general principle of justice that compensa,tion should be made where the private property is taken for public use, although the seizure and appropriation of private property under such circumstances by the military authorities may not be within the terms of the constitutional clause. (The italics are ours.) ”
The circumstances under which the question of the taking or destruction of private property arose in the case cited and relied on by the counsel for the defendants are very different from the circumstances unclfer which the United States took and used the land of the decedent.
The possession was taken after the cessation of hostilities between the United States and the Kingdom of Spain, and while in law a state of war did exist, there was a cessation of hostilities preceding the treaty of peace which was made in December following the occupation of the land, which terminated on the 11th of November. The protocol between the United States and Spain preparatory to the treaty of peace was made on the 12th day of August, 1898, and by virtue of that protocol hostilities had ceased and preparation made for the establishment of peace. (30 Stat. *396 L., 1742.) The property which was taken was not within the area of war and never had been, being removed more than 1,000 miles from the nearest approach of a public enemy.
It was taken as private property, and the lease, which was a part of the estate belonging to a tenant, was paid for upon the theory that he was entitled to pay for the reason that the United States had taken his property for public use. There was a military necessity that some land in that vicinity should be taken. There is always a necessity when property is taken, and it implies no wrong on the part of the Government that it does take property without the consent of the owner. Underlying the exercise of the right is grant of power upon the expressed condition that compensation be made.
The court will take judicial notice of the condition of the Government during the existence of the Spanish war; that it was in no embarrassed condition in the resources of supplies to occasion the exercise of the powers of war, such as surrounded it during the civil war. The law was not silent in the State of Pennsylvania, so as to deprive the citizen from all the safeguards of the Constitution in the protection of his rights of property and the lawful means of redress.
Judgment will therefore be entered for the claimant for the sum of $1,956, as indicated in the conclusion of law.