# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS
# THE CIRCUIT AND DISTRICT COURTS
# AND THE COMMERCE COURT

---

### MALONE v. HASTINGS et al.

(Circuit Court of Appeals, Fifth Circuit. February 6, 1912.)

### No. 2,169.

**1. SALES (§ 411*)—BREACH BY SELLER—ACTION BY BUYER—PLEADING—CONSTRUCTION.**

A petition stating that defendants agreed to sell plaintiff a quantity of "pure, fresh, white Bermuda onion seed, of the very best quality and grade," that the seed delivered was inferior and impure, producing an onion of very little value, and that defendants knew that, if good seed were planted, plaintiff's land would produce about 30,000 pounds of first-class onions to the acre, while insufficient to show a warranty as to quantity or quality of onions to be produced from the seed, is sufficient to show breach of contract by defendants, entitling plaintiff to recover damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1161–1164; Dec. Dig. § 411.*]

**2. DAMAGES (§ 40*)—BREACH OF CONTRACT—SPECULATIVE PROFITS.**

Speculative profits are too uncertain for legal contemplation as an element of damage for breach of contract.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 72–88; Dec. Dig. § 40.*]

**3. DAMAGES (§ 120*)—MEASURE OF DAMAGES—VALUE OF UNMATURED CROPS.**

The probable ultimate value of a planted or unmatured crop can be used as a basis for assessing damages, when there is evidence of the actual matured value of other crops of a like kind cultivated during the same period, in the same vicinity, and under substantially similar conditions.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 291–305; Dec. Dig. § 120.*]

**4. SALES (§ 411*)—BREACH BY SELLER—ACTION BY BUYER—DAMAGES—PLEADING.**

In an action by a buyer of onion seed against the seller for delivering seed of inferior quality, under a contract requiring delivery of the best quality, the petition was sufficient to entitle the buyer to recover damages based on the probable ultimate value of the crop, had the seed complied with the contract, where it alleged that the sellers knew when they furnished the seed that it was to be used on the buyer's farm, and of

---

the loss likely to ensue through defective seed, and that crops grown on adjoining lands from the kind of seed which the sellers agreed to furnish, under identical conditions of season, climate, cultivation, and irrigation, yielded 30.000 pounds to the acre.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1161–1164; Dec. Dig. § 411.*]

In Error to the Circuit Court of the United States for the Western District of Texas.

Action by W. D. Malone against H. G. Hastings and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

This was a suit brought by the plaintiff in error, who was a ·resident of Hays county, Tex., against the defendants in error, who were residents of Atlanta, Ga., in a state court. Personal service was obtained on the defendant H. G. Hastings in Texas. The case was removed by the defendants in error to the Circuit Court of the United States for the Western District of Texas. In that court an amended or substituted petition was filed by plaintiff. The Circuit Court sustained a demurrer interposed by defendants to the petition; and, the plaintiff declining to further amend, the court rendered final judgment, dismissing the case, at plaintiff's costs. It is from this judgment that the writ of error was taken.

The petition averred that the plaintiff was the possessor of a farm on the San Marcos river, in Hays county, Tex., during the years 1906 and 1907; that the farm was irrigated by the river, which contained a never-failing supply of water; that it was well adapted to the raising of onions, of which it had produced many successful crops; that during the season of 1906–07 all necessary appliances were installed on it to properly irrigate the land for the growth of a crop of onions; that during the year 1906 the defendants were engaged in the business of growing and selling seeds by wholesale in Atlanta, Ga., and that some time during the year 1906 the plaintiff' purchased from the defendants, through authorized agents, 80 pounds of onion seed, represented by defendants to be "pure, fresh, white Bermuda onion seed of the very best quality and grade," and paid the price thereof to defendants; that the defendants were growers of such seed, and thereafter shipped to plaintiff from Atlanta, Ga., the onion seed so sold, and which had been grown by them; that the plaintiff did not see the seed until its arrival in Texas, and that an inspection thereof, on arrival, did not reveal the defects, which it is alleged were afterwards developed therein; that the defendants, through the agents that made the sale, knew the purpose for which it was bought, the land on which it was to be sown, and that if good seed were planted the land would produce about 30,000 pounds of first-class onions to the acre, but, if the seed was of inferior quality, there would be a much less production, of ˙ ferior quality, or none at all; that upon the arrival of the seed the plaintiff, after properly preparing his land, sowed the seed and properly cultivated and irrigated it; that the season was propitious for onion raising; that onion seed of supposed similar kind and quality, planted on similar neighboring lands and cultivated in the same way, did in fact produce in the same season an average crop of 30,000 pounds to the acre under similar conditions; that plaintiff's crop proved a failure; that after he had planted 15 acres he found the onions grown from the seed so inferior in quality as not to justify further planting, and did not transplant the remaining 10 acres he had prepared for the crop, for that reason, but, to reduce his damages, planted it in cotton, which was. however, consumed by the boll weevil; that ·he realized from the 15 acres which he did transplant in onions only the sum of $1,000 net; that the 80 pounds of seed, if of the kind contracted for, would have been sufficient to plant 25 acres, and would have reasonably produced 750,000 pounds, and would have reasonably yielded him a return of $18,750; that the seed actually furnished' by the defendants was "not pure, fresh, white Bermuda onion seed, of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

best grade and quality of white Bermuda onion seed, but same were very inferior seed of impure quality, and a seed that, so far as same did germinate at all, would produce only a very faulty and inferior onion, and an onion of very little value"; that it was due to the defective quality of the onion seed furnished that plaintiff's crop failed; that the plaintiff had no knowledge of such defects when he planted the onion seed, and could not have ascertained it from the only inspection possible; that the defendants, who were growers of the seed, knew or could by reasonable diligence have known of its defective character, and of the results consequent thereupon. To a petition with substantially these averments a general and certain special demurrers were sustained by the court below. Consideration of the general demurrer is sufficient for the disposition of this appeal.

W. G. Barber and James H. Robertson, for plaintiff in error.

O. T. Brown and S. W. Fisher, for defendants in error.

Before SHELBY, Circuit Judge, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). The effect of the general demurrer is to assert that the petition does not set out a cause of action, because (1) it failed to aver facts which show that a warranty, express or implied, accompanied the sale; and (2) it claimed no damages other than those based on the possible value at maturity of a planted, but not matured, crop, and damages of this kind are too speculative and uncertain for allowance.

[1] 1. The contention of the defendants in error upon the first point is that the only obligation resting on the defendants, according to the averments of the petition, by virtue of the contract, was to furnish the plaintiff with a variety of seed known as white Bermuda onion seed, and as the petition averred that seed of that variety had been actually furnished, the defendants were not responsible for its quality, if it failed to produce the desired and anticipated results, and that there was no averment of a warranty, either express or implied, that the onion seed furnished would produce any specific yield in quantity or quality.

The infirmity of this contention lies in the mistaken assumption that the contract of sale required of the defendants only to furnish seed of a given variety, regardless of quality. We agree with defendants that there was no warranty as to the quantity or quality of onions to be produced from the seed sown. The petition avers that the seed "contracted for and to be sold and delivered by defendant to plaintiff under said contract should be pure, fresh, white Bermuda onion seed of the very best quality and grade." This much by the express terms of the contract of sale the defendants were bound to supply. The defendants clearly breached the contract of sale if they supplied a substantially different article from that contracted for, and, if the damages claimed were due to such breach, the right of recovery would be complete. The petition avers as to the character of the seed actually supplied:

"That said seed so shipped and delivered to plaintiff by defendants were not pure, fresh, white Bermuda onion seed of the best grade and quality, nor were they of a reasonably good grade or quality of white Bermuda onion seed, but same were very inferior seed, of impure quality, and a seed that, so far as the same did germinate at all, would produce only a very faulty and inferior onion, and an onion of very little value."

That this averment shows a noncompliance with the contract on defendants' part is clear. We need not, therefore, enter upon the question of warranty.

We do not interpret the petition as attempting to assert a covenant by defendants to supply seed that would produce 30,000 pounds to the acre and a resulting breach, in that a less amount was produced. As we construe its averments, it asserts an agreement on defendants' part to furnish seed of the best grade and quality, a breach by actually furnishing seed that was impure, inferior, and not even of reasonably good grade, with the result that plaintiff lost the difference between the value of a crop produced from seed of the best grade and quality, which is averred to have been about 30,000 pounds to the acre, and what the inferior seed furnished actually produced, which is averred to have been 165,000 pounds for the 25 acres.

[2] 2. The further contention of the defendants in error is that the only damages claimed, being based upon the value of an unmatured crop, are too speculative for allowance.

It is a general rule that speculative profits are too uncertain for legal computation. The rule does not prevent the recovery of profits, because they are profits, but only because of their uncertainty or remoteness. So it is only such profits as are speculative or remote that cannot be recovered. Damages, based upon the value of unmatured crops, are analogous to profits lost, and are governed by the same rule. The inquiry in every case of profits claimed as damages, therefore, includes the ascertainment of the issue whether the profits are reasonably certain, and not too remote for legal assessment; and this is as true of damages based on the prospective value of unmatured crops as it is of lost profits. That the damage resulting from the failure of a crop due to inferior seed is the natural and direct, as distinguished from the remote, result of a breach of contract to furnish good seed, in a case in which the parties to the contract contemplated at the time of the sale that the seed was to be used for the planting of a crop, is clear.

The more difficult question is whether damages based on the result of an unmatured crop are speculative. The test by which in each instance this question is to be ascertained is whether there are sufficient data to determine with reasonable certainty the probable value the crop would have had, if matured.

The recent case of Metzger v. Brincat, 154 Ala. 397, 45 South. 633, involved the right to recover the loss of profits due to the violation of a covenant in a lease not to let adjoining premises for occupancy in a business of a like character to that conducted by the appellee tenant, who operated a fruit stand, and applies the test we have mentioned. The court said:

"The contract shows that the matter in the contemplation of the parties was that the business of the appellee should not be injured by renting a portion of the house to another party, and the evidence shows that the damages were ascertainable with reasonable certainty. * * * The case of Montgomery Co. Union Agr. Soc. v. Harwood, 126 Ind. 440, 26 N. E. 182, 10 L. R. A. 532, was for breach of a provision in a lease of a mere temporary privilege for a few days, and there were no data from which probable sales

could be estimated, and that character of business was contrasted with an established business. This case, and others cited, are differentiated from the one now under consideration, in that in the present case there is evidence that the particular locality where this fruit stand was located had for years been a favored place for such business, on account of being the corner where passengers from the railroad station passed; that this particular stand had been previously occupied by the party whom Brincat had bought out, and to whom the defendant had rented that part of the building between plaintiff and said corner; that all fruit dealers in that locality had experienced a definite depreciation in business whenever a rival stand was placed between them and said corner; and it was also shown 'that this particular business experienced a like depreciation from the time the rival stand was set up. The damage was consequently ascertainable with reasonable certainty, and was not speculative; and the contract had been made with a view to guard against that particular damage."

The distinction drawn by the Alabama court between the case of Montgomery County v. Harwood, 126 Ind. 440, 26 N. E. 182, 10 L. R. A. 532, in which no data were present, and the case decided by it, in which sufficient data were present, clearly illustrates the proper rule.

In the case of Bell v. Reynolds & Lee, 78 Ala. 515, 56 Am. Rep. 52, the same court applied this test to the case of damages based on the value of an unmatured crop. The action was one for the price of fertilizer sold defendant. The defendant sought to offset the amount of damages he claimed to have suffered by the failure of plaintiff to deliver all the fertilizer contracted to be sold him, whereby only part of defendant's land was fertilized; the measure of damages claimed being the difference between what the unfertilized land actually produced and what it was claimed it would have produced if it had been fertilized. The data on which the court acted are thus set out in the opinion (78 Ala. 512 [56 Am. Rep. 52]):

"The land upon which the fertilizer was designed to be used was prepared and cultivated in a farmerlike manner. Upon a portion of it the 9½ tons was used, and this portion produced between 300 and 400 pounds of seed cotton per acre more than that adjoining, which was also planted in cotton—the quality and cultivation of each part being precisely the same."

Upon the measure of damages in this case the court said (78 Ala. 514, 515 [56 Am. Rep. 52]):

"The rule is often stated in broad terms that profits are not ordinarily included in the injury for which compensation is made. And again it is frequently asserted that 'the party injured is entitled to recover all his damages, including gains prevented, as well as losses sustained.' Griffin v. Colver, 16 N. Y. 489 [69 Am. Dec. 718]. The true rule seems to be that profits, which have been sustained as the natural consequences of the breach or wrongful act complained of, are recoverable, unless they are objectionable either on the ground of remoteness or of uncertainty. Those profits are usually considered too remote, among many others, which are not the immediate fruits of the principal contract, but are dependent on collateral engagements and enterprises, not brought to the notice of the contracting parties, and not, therefore, brought within their contemplation, or that of the law. Masterton v. Mayor of Brooklyn, 7 Hill [N. Y.] 61 [42 Am. Dec. 38]. Those are considered uncertain which are purely speculative in their nature, and depend upon so many incalculable contingencies as to make it impracticable to determine them definitely by any trustworthy mode of computation. * * * We would not be willing to say that the damages here claimed by the defendant, Bell, by way of lost profits, would have been recoverable, if their ascertainment had been left to mere conjecture. The amount of cotton or other crops

which land produces is dependent upon so many varying contingencies as to render it very indeterminate. It will vary with the seasons, the adaptation of soil and climate, and its comparative exemption from the ravages of the worm or other destructive insects. Speculative opinions of witnesses, as to the probable influences of these operative causes, would be a poor criterion for the measure of values. Wilkinson v. Ketler, 59 Ala. 306. In this case, however, these difficulties are entirely removed. The character of the season is absolutely known. So is the precise effect of the fertilizer used during this particular season. No speculation is needed as to how much rain and how much sunshine were requisite to produce a given amount of crops to the acre, nor as to the probable effect of the fertilizer upon different kinds of soil, or even the proportion of it best suited to the land, and therefore what would necessarily have been produced on the remainder, which is shown to have been in precisely the same state of cultivation, and similar in quality of soil."

The cases of Wolcott v. Mount, 36 N. J. Law, 262, 13 Am. Rep. 438, Passinger v. Thorburn, 34 N. Y. 634, 90 Am. Dec. 753, and White v. Miller, 71 N. Y. 118, 27 Am. Rep. 13, were all cases in which the recovery was permitted of damages based on the difference between the actual value of a crop planted with defective seed and the estimated value of a crop cultivated under like conditions from good seed. In each the court held that the cultivation of similar crops on portions of the same or adjoining lands, under similar conditions, furnished data sufficient to remove the uncertainty. This rule is thus stated in 13 Cyc. p. 56:

"In some cases the courts have allowed damages for the injured crop, based upon estimates of other crops raised in the immediate neighborhood, and not affected by the injury complained of."

[3] From these authorities we deduce the rule to be that the probable ultimate value of a planted, but unmatured, crop can be used as a basis for assessing damages, when there is evidence of the actual matured value of other crops of a like kind, cultivated during the same period, in the same vicinity, and under substantially similar conditions.

The Texas decisions are conflicting upon this proposition. The case of Jones v. George, 56 Tex. 149, 42 Am. Rep. 689, is to the effect that the ultimate value of an unmatured crop is not a proper basis for the estimate of damages. On the other hand, there are a number of cases in that state which hold that the probable value of even an unplanted crop of rice, the planting of which was prevented by a failure to furnish water for irrigation as contracted for, may be used as a basis for estimating damages, in connection with proof of the actual value of matured rice crops, made upon adjoining irrigated land, under like conditions of cultivation, during the same season. Colorado Co. v. McFarland (Tex. Civ. App.) 94 S. W. 403; Hoopes v. East, 19 Tex. Civ. App. 531, 48 S. W. 764; Raywood Co. v. Langford, 32 Tex. Civ. App. 401, 74 S. W. 927; Raywood Co. v. Wells, 33 Tex. Civ. App. 545, 77 S. W. 253; Tres Palacios Co. v. Eidman, 41 Tex. Civ. App. 542, 93 S. W. 698.

In view of this conflict, and because the measure of damages is a question of general, and not local, law, it is our duty to adopt the rule best supported by authority and reason. If, under the evidence

in a particular case, the damages are susceptible of reasonable computation, and are within the actual contemplation of the parties to the contract, there can be no valid reason for rejecting them merely because they are in the nature of lost profits, or depend upon the estimated value of a growing, but unmatured, crop. The objection that the principle is liable to abuse in its application, especially in jury trials, would apply with force to cases in which sufficient data are wanting to determine with reasonable certainty the probable value of the matured crops; but to such cases the rule has no application. Likelihood of abuse in cases where sufficient data are in evidence is no greater than in many cases of well-recognized elements of damage, which can only be assessed with approximation. The remedy for such abuse lies, not in rejecting altogether this class of damages, but in the exercise of the reviewing power of the court in each case in which they are allowed. Their entire rejection would cause manifest injustice, which would be remediless.

[4] It remains for us to apply the rule to the facts averred in the petition in this case. It is there averred that the defendants had knowledge, when they furnished the plaintiff the alleged defective seed, that it was to be used to produce a crop of onions on plaintiff's farm, of the conditions it would encounter with respect to cultivation, and of the crop loss likely to ensue from the furnishing of defective seed. The damage to the crop which ensued from the planting of bad seed was therefore within the contemplation of the defendants at the time of the sale contract as a result of its breach in this respect, and for that reason such damages were not remote. The petition also avers that crops of onions, grown on adjoining lands from the kind of seed which it is averred defendants agreed to furnish plaintiff and under identical conditions of season, climate, cultivation, and irrigation, yielded 30,000 pounds to the acre. These averments of facts, when proven, supply the data which the authorities hold are sufficient to enable a jury to ascertain with reasonable certainty the amount of damages, based on the ultimate value of an unmatured crop, and to take away their otherwise speculative character. The averments of the petition are full as to all the facts made essential by the rule, and the plaintiff should have been allowed an opportunity to prove them, if he could. The action of the court in depriving him of this opportunity by sustaining the general demurrer to his amended petition was erroneous.

This results in a reversal of the judgment of dismissal, and the remanding of the case for further proceedings, conforming to this opinion.