THOMAS E. GLEDHILL, APPELLEE, V. STATE OF NEBRASKA, APPELLANT.

FILED AUGUST 11, 1932.   No. 28169.

C. A. Sorensen, Attorney General, L. Ross Newkirk and Homer L. Kyle, for appellant.

Patrick & Smith, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

DAY, J.

The plaintiff seeks to recover damages from the state, sustained by himself and as assignee of the claims of 19 others, by reason of the construction of a temporary bridge by the state across a watercourse on a state highway. The state appeals from a judgment of approximately $25,000 in favor of plaintiff.

The suit was brought against the state under the provision of the state Constitution which prohibits the taking or damaging of private property for public use without just compensation. In September, 1928, a steel span bridge at the location involved washed out by a heavy rainfall and replacement was necessary. The drainage ditch follows the general course of the Papillion creek, drains over 600 square miles, and carries a large volume of water in flood time. The highway involved is designated as U. S. 75 and is an important one, carrying heavy traffic from Omaha to Kansas City. At the time, the state was engaged in paving and otherwise improving the highway. It was necessary to replace this bridge quickly to avoid inconvenience to the public. Since a change in the location of the road was contemplated but

not definitely determined, the state, in order to save money, erected a temporary wooden pile bridge. In order to support this bridge, piles were driven within the ditch, and to reinforce it other piles were driven in the ditch upstream. Thereafter on March 5, 1929, a thaw caused the ice in the ditch to break up and, together with water draining in the ditch from melting snow, began to move downstream. The ice lodged against the piling of the bridge causing a gorge or dam which held back the flow of ice and water above the bridge and flooded the land for which plaintiff claims damage. The plaintiff alleges that said land was rendered useless during the crop season of 1929.

The property of the plaintiff and his assignors was damaged without actual taking by the construction of this temporary public improvement. It was the purpose of those representing the state to construct a temporary bridge as cheaply as possible. The bridge constructed was the cause of the damage to the plaintiff and his assignors who owned land upstream from the bridge. The evidence in this case is overwhelming that the beginning of the flood was caused by the floating ice cakes in the ditch being held at the bridge. From this point the ice and water backed up for a considerable distance until the ditch was filled, when it overflowed the land and destroyed the dikes which had been constructed at private expense by the landowners. There is evidence in the record of engineers to establish the various levels along this ditch which tends to prove that the bridge was not the cause of the flood. However, this evidence is not impressive in view of the fact that there was no flooding until the ice cakes lodged against the bridge and that the flood started from that point. The bridge was so constructed that it obstructed the flow of ice and water and caused the flood. There was other evidence that this ditch had overflowed prior to the building of this bridge. The finding of the trial court that this temporary highway bridge was the cause of this flood and the consequent

damage is the only finding possible from the evidence in this case.

Is the damage resulting from the construction of this bridge such as would entitle the plaintiff to just compensation? The property of the plaintiff and his assignors was damaged without actual taking by the construction of a temporary public improvement. Since the insertion of the words "or damaged" in section 21, art. I of the Constitution of 1875, it has been the well-settled law in this state that one whose property was damaged without actual taking was entitled to just compensation. *Omaha & R. V. R. Co. v. Standen,* 22 Neb. 343; *City of Omaha v. Kramer,* 25 Neb. 489. In the latter case, it was said: "The words, 'or damaged,' in section 21, art. I of the Constitution, include all damages arising from the exercise of the right of eminent domain which cause a diminution in the value of private property." At a later date, in *Johnson v. Peterson,* 85 Neb. 83, this court said: "Private property in Nebraska cannot be taken or damaged for public use without just compensation therefor, and this rule applies to public authorities exercising the right of eminent domain in establishing and opening public highways." This latter case was cited with approval in *Weinel v. Box Butte County,* 108 Neb. 293. Recently this court held, in *Nine Mile Irrigation District v. State,* 118 Neb. 522, to the same effect. These few cases, cited out of the many, indicate in outline the established law in this state.

The fact that the damage in this case was of a temporary nature and caused only by a temporary bridge constructed for the use and convenience of the public does not prevent a recovery. 1 Nichols, Eminent Domain (2d ed.) p. 309, says: "An entry on private land may constitute a taking, though temporary in its nature and for only a temporary purpose. A city could not, for example, while it was building a new city hall on the site of an old one, formally divest the owner of a neighboring building of the use of his property for a year and employ it

for a temporary seat of government without compensation for depriving him of the use of his land and building. Accordingly it is held that land or other property cannot be actually put to use by public authority for a temporary purpose without compensating the owner." The authority cites the following cases which support the rule. *McKeon v. New York, N. H. & H. R. Co.*, 75 Conn. 343, 61 L. R. A. 730; *Brigham v. Edmands*, 7 Gray (Mass.) 359; *Alexander v. United States*, 39 Ct. Cl. 383, and other cases. In line with this authority and the amendment to our Constitution by the adding of the words "or damaged," where one's land is damaged temporarily for public use by the construction of a public improvement by the state, it constitutes such a damage as requires compensation under section 21, art. I of the Constitution.

1 Lewis, Eminent Domain, sec. 78, says: "Works of public utility must be so constructed as not to interfere with the accustomed flow of the stream, otherwise there is a right to recover for any consequent damage to private property. Authority to bridge or cross a stream does not imply authority to interfere with its current." Section 80 states: "Where works are constructed below the land of a proprietor, such as a bridge, or culvert, or dam, or alteration of the channel, which cause the water to set back and overflow the land of such proprietor, there is a violation of such right and, if the works are authorized by law, there is a taking for which compensation must be made."

Another authority, 27 R. C. L. 1105, sec. 39, states the rule thus: "Bridges, trestles or culverts which are constructed over a stream must be so built and maintained as to provide, not only for the flow of all water that can be carried in the channel, but if the probabilities are that the stream to be crossed will at times overflow its banks, there is as much occasion to provide an outlet for the surplus water as for that which is confined within the channel. * * * Failure to make proper provision for the flow of water under a bridge or culvert has been held

to impose liability, although such bridge or culvert may be constructed according to approved principles of engineering; the fact that it does materially obstruct the flow being held to be in itself evidence that it was not properly constructed, regardless of the principles upon which it was built"—citing *Fairbury Brick Co. v. Chicago, R. I. & P. R. Co.,* 79 Neb. 854, 13 L. R. A. n. s. 542; note 28 L. R. A. n. s. 156. See, also, *Clark v. Cedar County,* 118 Neb. 465, a comparatively recent, Nebraska case. The constitutional provision embraces the damages which affect the value of a person's property and includes such damages as were sustained in the case under consideration.

No good reason suggests itself which would prevent the plaintiff recovering the damages sustained in this case. The cheap temporary wood piling structure with which the state bridged the drainage ditch was erected for the public benefit and use; such a bridge was erected because it was economical and because it was thought to best serve the interests of the state. It is not just and equitable for the state to save money in the erection of a temporary bridge for public use which from the very nature of its construction damages private property without giving the private owners just compensation for the damage. Such a course would not be in line with our constitutional provision, our judicial decisions, or the general policy of the state.

The state contends that the pleadings and the evidence establish an action in tort for negligence or nuisance, and that therefore the plaintiff is not entitled to recover, for that the state is not liable upon such a cause of action. The pleadings in this case allege that the state built this temporary bridge in a negligent manner and that, as a result of the method of construction, the damage resulted. It is unimportant in this case whether the construction of said bridge was negligent or not. The construction by the state resulted in damage to the plaintiff and under the constitutional provision he is entitled to recover. As

was said by Chief Justice Maxwell in *Omaha & R. V. R. Co. v. Standen,* 22 Neb. 343, the constitutional provision "was intended to furnish an additional remedy, not to curtail or restrict any right which previously existed." It is true that numerous cases in this state for damages arising from an improvement for public use have been based upon negligence. This was especially true at a time when the Constitution only provided that damages should be awarded to the owner for property taken for public use; then a suit for damages based upon negligent construction was the only remedy afforded to one whose property was not taken. In *Douglas County v. Taylor,* 50 Neb. 535, this court held "that it was immaterial what technical name might be given to Taylor's action; for whether his petition stated a cause of action *ex delicto* or *ex contractu,* the averments thereof, if true, established the fact that his property had been taken and damaged for public use, and that by virtue of section 21 of the Bill of Rights (Const. art. I, sec. 21) he was entitled to compensation therefor." It would be unconscionable for the state, which ought to set an example of just and fair dealing, to save money by the erection of a cheap, inadequate, and temporary bridge for the public use, thereby causing great damage to the owners of private property without compensation.

The plaintiff sought to recover and the court allowed recovery for the damage occasioned to the upstream owners of land for the damage to the dikes, which had been constructed at private expense, and for the temporary loss of the use of the land. The destruction of the dikes was a damage to the land for which the plaintiff could recover. In *Nine Mile Irrigation District v. State,* 118 Neb. 522, this court permitted a recovery of the cost of the restoration of the right to use the water. In that case, the state had destroyed the right to use the water of the North Platte river by placing an obstruction in the branch of the river in which the intake of the irrigation district was located. The damages in that case

were the actual expenditures which the public improvement made necessary in order to place the irrigation district in the situation in which it was before the improvement was made. The plaintiff and his assignors had constructed these dikes to protect their land from flooding. They were entitled to have them remain as they were constructed prior to the damage caused by the state. The trial court therefore properly allowed certain owners of land damages for the destruction of these dikes.

The question of the measure of damages for the loss of use of the land is more difficult. The state contends that, where property has been taken or damaged for a public use, the owner is entitled to receive as compensation the difference between the value of such property immediately before and immediately after the completion of the improvement from which the injury results. The following cases support this rule: *Lowell v. Buffalo County,* 119 Neb. 776; *Chicago, R. I. & P. R. Co. v. O'Neill,* 58 Neb. 239; *Wiles v. Department of Public Works,* 120 Neb. 689; *City of Omaha v. Flood,* 57 Neb. 124, 133; *Chicago, B. & Q. R. Co. v. O'Connor,* 42 Neb. 90; *Omaha S. R. Co. v. Todd,* 39 Neb. 818; *Chicago, R. I. & P. R. Co. v. Sturey,* 55 Neb. 137; *Churchill v. Beethe,* 48 Neb. 87; *Chicago, R. I. & P. R. Co. v. Buel,* 56 Neb. 205; *Gillespie v. City of South Omaha,* 79 Neb. 441; *Stehr v. Mason City & Ft. D. R. Co.,* 77 Neb. 641; *Beckman v. Lincoln & N. W. R. Co.,* 85 Neb. 228; *Mohler v. Board of Regents of University of Nebraska,* 102 Neb. 12. This is unquestionably the rule in this state, but is not applicable where the damage is temporary, as in this case. In such a case, the rule is stated in 20 C. J. 740, to be: "Where land is taken, not to be held permanently, but only for temporary use, the measure of compensation is not the market value, but what the property is fairly worth for the time during which it is held, and the same rule applies where property, no part of which is taken, is temporarily injured." In support of this rule the following cases are cited: *Vincent v. New York, N. H. & H. R. Co.,* 77 Conn. 431;

*Illinois Central R. Co. v. Elliott,* 129 Ky. 121; *Doremus v. Mayor, etc., of City of Paterson,* 73 N. J. Eq. 474. In the *Elliott* case, *supra,* the court said: "Where a railroad obstructs * * * a street by construction of its road, but afterwards removes the obstruction, * * * the measure of damages * * * is the diminution in the value of the use of it during the continuance of the obstruction caused thereby." In *City of Cape Girardeau v. Hunze,* 314 Mo. 438, 47 A. L. R. 25, the court held: "The measure of damages for temporary use of land in an eminent domain proceeding is what the property is fairly worth for the time during which it is held." Quoting from the last case: "In substance it told the jury that they shall award to appellants the reasonable rental value of the land temporarily acquired for the time which plaintiff proposed to use it absolutely * * * and the damages which the jury might find from the evidence will result to appellants' remaining land because of such temporary use." The Missouri court then quotes and follows the rule above quoted from 20 C. J. 740, and concludes with this statement: "Our own court seems to have followed the foregoing rule. *Chicago, S. F. & C. R. Co. v. McGrew,* 104 Mo. 282; *St. Louis v. Brown,* 155 Mo. 545." The damages which may be recovered by one whose property is damaged by public improvement is the reasonable value of the use of the land which is temporarily destroyed.

Again, we are confronted with the difficult problem of determining the value of the use of land which was damaged. In some instances courts have held that the value of the use of the land was the rental value. *In re Condemnation of Lands,* 250 Fed. 314; *St. Louis v. Brown,* 155 Mo. 545; *Brown v. Pierce County,* 28 Wash. 345; *Tait's Exr. v. Central Lunatic Asylum,* 84 Va. 271; *Williams v. Brooklyn Elevated R. Co.,* 126 N. Y. 96; *Leigh v. Garysburg Mfg. Co.,* 132 N. Car. 167; *City of Corning v. Holmes,* 167 N. Y. Supp. 746; *Welsch v. Elk River Power & Light Co.,* 157 Minn. 451. On the other hand,

it has been held that the rental value is not the proper damage.

In the instant case, the plaintiff's claim is represented by the loss of the use of the land for the crop season for 1929. The trial court assessed the damages for the loss of the use of the land for that year. Much of this land involved was rented to tenants who gave the owner a share of the crop as rental. The trial court determined the value of the use of the land from evidence tending to prove the value of the crop which would have been raised on the land but for the damage caused by the flood. "The general rule is that damages, to be recoverable, must be direct and certain. Contingent, remote, or speculative damages, such as the loss of speculative profits, will not be allowed." 20 C. J. 764. The state argues that the damages allowed in this case are speculative and will not be allowed. A recognized authority says: "Damages based upon the value of unmatured crops are analogous to profits lost, and are governed by the same rule precluding recovery in cases of either uncertainty or remoteness. The question of whether damages based on the result of an unmatured crop are speculative must be determined by whether there is sufficient data to determine with reasonable certainty the probable value it would have had if matured." 17 C. J. 785. The determination of the value of the loss of the use of this land can be made almost certain in this case if based upon the evidence of the value of the crop which could have been raised upon this land but for the flood. The owner of the land under most of the leases was entitled to a share of the crop produced. No better way could be devised to determine the rental value of this land than to determine the value of the crop they could and would have produced except for the flooding. The evidence in this case shows that the cultivation of similar crops on portions of the same or adjoining lands under similar conditions furnishes sufficient data to remove the uncertainty as to damage of the unmatured crops. When there is

evidence of the actual value of other matured crops of a like kind grown during the same period, in portions of the same or adjoining land under similar conditions, there is sufficient data to determine with reasonable certainty the probable value of an unmatured crop if it had matured. *Malone v. Hastings,* 193 Fed. 1, affirmed 201 Fed. 1020, mem. In the above cited case, the crop was planted, but due to inferior seed furnished by defendant the plaintiff claimed damage. In this case, the plaintiff was prevented from planting, due to the flooded condition of the land. When the water overflowed, it carried huge chunks of ice, the melting of which kept the ground wet until late in the summer. The discussion of the rule in the *Malone* case, *supra,* is pertinent and applicable to this case. It is: "The objection that the principle is liable to abuse in its application, especially in jury trials, would apply with force to cases in which sufficient data are wanting to determine with reasonable certainty the probable value of the matured crops; but to such cases the rule has no application. Likelihood of abuse in cases where sufficient data are in evidence is no greater than in many cases of well-recognized elements of damage, which can only be assessed with approximation. The remedy for such abuse lies, not in rejecting altogether this class of damages, but in the exercise of the reviewing power of the court in each case in which they are allowed. Their entire rejection would cause manifest injustice, which would be remediless."

In this case, there was nothing left to conjecture or speculation as to the probability of the crop or the extent of it dependent upon the rainfall or unfavorable conditions. Every element surrounding the production of a crop was then known and was applicable alike to the land that was flooded and that which was not. The trial court made this finding: "The court further finds that said lands so flooded, set apart for the raising of corn in 1929, but for said flooding would have produced an average of 50 bushels per acre, of the value of 90¢ a bushel, and that

the cost of raising, harvesting and marketing an acre thereof was $11.75." In this particular case, there is no more accurate way of determining either the rental value or the value of the use than the determination made in this case from the evidence. The evidence is direct and certain that the owner of this land lost, the amount calculated upon this basis from the flooding of the land.

The right of the tenants to recover has been challenged. Most of them were tenants from year to year, and at the time of the construction of the improvement, they were lessees of the land. A number of them, however, were not lessees until March 1, 1929, and the right of these to recover will especially be challenged for the reason that at the time of the construction of the improvement they had no interest in the land. Sufficient answer to this contention is the language of the opinion in *Omaha & R. V. R. Co. v. Standen*, 22 Neb. 343, which is as follows: "In such case there could be no recovery until actual damages had been sustained. Thus, suppose the owner of the land at the time the bridge was built had brought an action, could he have recovered for anticipated overflows? We think not. There must be actual injuries resulting from the unlawful obstruction to justify a recovery." No cause of action had accrued until the land was damaged. At the time of the injury to the property, the tenants involved in this case were in possession of the land for the year. A tenant from year to year has an interest in the property so as to be classed as an "owner" in the constitutional sense and to be entitled to be compensated as to damage for his property right. This is especially true in this case as to the tenant of one tract who paid cash rent. Ordinarily, the damages which should be paid to a tenant are not easily ascertainable. He is often held to be entitled to recover the decrease in the market value of his unexpired term. To fix the market value of an unexpired term is not easy, since a leasehold falls within the class of property not commonly bought and sold. It cannot be questioned that the lessees in this case had a

property right and were entitled to the use of this land which was flooded. The best available test as to the damage which they sustained is what they could and would have made if the flood had not deprived them of the use of the land. Anticipatory profits are ordinarily not considered because they are too uncertain and speculative, but as pointed out heretofore in this opinion what portions of the same land and adjoining land produced in the given year, it furnishes evidence which is reasonably certain what the crops on this land would have been. The best available test of the value of the use of the land to the lessee is the value of the crops which could and would have been grown upon this land, particularly where it is removed from speculation and remoteness and made definite and certain by proof as to what portions of the land and similar adjoining land produced.

There were a number of tracts of the land involved which were suitable for and used for truck-gardening which it was alleged and there was testimony tending to prove the amount of the damage to the use of the land. This testimony is not contradicted or questioned and no objection is made to the claims except the general objections heretofore discussed.

And, finally, the state senate by the adoption of a resolution (Laws 1931, ch. 171) authorized this suit to be brought in the district court for Sarpy county. Such authorization to bring suit does not create a liability, which does not heretofore exist.

"A resolution by one branch of the legislature, authorizing an individual to maintain action against the state to recover damages caused by the negligence of a state employee, does not render the state liable for the negligent acts of its employee, in the absence of a statute making the state liable therefor." *Shear v. State,* 117 Neb. 865; *Kent v. State,* 118 Neb. 501. See *Benda v. State,* 109 Neb. 132.

The senate authorized the suit to be instituted under authority of section 27-319, Comp. St. 1929. In such a

case, section 27-322, Comp. St. 1929, provides: "The court in which such action may be brought shall hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require." In *Lancaster County v. State*, 97 Neb. 95, the court referring to these sections of the statutes said: "Under this direction it is the duty of the court to brush aside technical defenses and to act in like manner as if the parties were seeking to amicably settle their controversy." In *Commonwealth Power Co. v. State*, 104 Neb. 439, this court said: "The purpose of these sections is to take such cases out of the ordinary rules of law and to place their determination upon a much higher and broader ground, * * * and to make justice and right, as viewed by the court, the basis of its decision."

With this rule as our guide, how should this case be decided? The state, in order to save money, built a cheap, temporary, and inadequate bridge. This bridge obstructed the flow of water in a watercourse and flooded the plaintiff's land to his damage. He lost the use of his farm land for the crop season of 1929. The Constitution protects him against damage for public use without compensation. Thus analyzed, justice and right, as well as the law of the state, require the plaintiff's compensation.

We have examined carefully each one of the twenty claims presented, which have not been delineated here in detail for the reason that it would extend this opinion to an unwarranted length. We find no error on the part of the trial court and its finding is adopted as the judgment of this court.

AFFIRMED.

HASTINGS, District Judge, dissents.