LANCASTER COUNTY, APPELLEE, v. STATE OF NEBRASKA, APPELLANT.

FILED OCTOBER 30, 1914.   No. 18;634.

1. **Limitaton of Actions:** ACTION AGAINST STATE.   The statute which permits an action to be brought against the state by permission of the legislature or either house thereof provides:   "The court in which such action may be brought shall hear and determine· the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require."   Rev. St. 1913, sec. 1180. Under this direction it is the duty of the court to brush aside technical defenses and to act in like manner as if the parties were seeking to amicably settle their controversy.   Under these provisions and the circumstances of this case as set forth in the opinion the statute of limitations should not be held to·be a defense to the action.

2. **County Treasurers:** LIABILITY FOR DEPOSITS.   Where a county treasurer has deposited money received by him for taxes "belonging to the several current funds of the county treasury" in a depository bank which has given bond as specified in the depository statute (laws 1891, ch. 50), he is not liable for the safe-keeping of the funds.

3. **Taxation:** LOSS OF STATE TAXES: LIABILITY OF COUNTY.   Where the county treasurer is relieved from liability upon his bond for the loss of funds deposited in such banks, the county itself (in the absence of extraordinary circumstances, such as fraud, bad faith, or gross negligence in the selection of a depository or the approval of its bond) is free from liability to the state for money collected as taxes in the capacity as trustee for the state and deposited by the county treasurer in such depository bank.

4. ——: ——: ——. A county is not an insurer of the safe-keeping of funds derived from the collection of state taxes in its capacity as trustee for the state.

5. ——: ——: ERRONEOUS PAYMENT TO STATE: RECOVERY BY COUNTY. Where a county treasurer, under the mistaken idea that a county was the insurer of money received by it from taxes for the benefit of the state, paid to the state treasurer from other money belonging to the county an amount equal to the proportion which the state owned of the money deposited in a depository bank, which was lost on account of the failure of the bank without the fault of the county, an action may be maintained, under the permission of the state senate, to recover back such money erroneously paid, and the fact that certain entries were made in the county books by the treasurer charging the money lost to certain county funds, under the same mistaken idea, is no defense to the action.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed.*

*Grant G. Martin, Attorney General,* and *George W. Ayres,* for appellant.

*Jesse B. Strode, Strode & Beghtol* and *George E. Hager, contra.*

LETTON, J.

The following states plaintiff's cause of action in substance: In January, 1893, the Capitol National Bank of Lincoln was an authorized county depository. The treasurer of Lancaster county had on deposit therein $39,660.62, public money derived from the payment of taxes. Upon the 21st of that month the bank failed, and over $32,000 of the amount deposited was lost. The county treasurer, acting upon his own judgment, shortly afterwards paid to the state treasurer out of county funds the amount of $10,348.27 for taxes collected by Lancaster county for the state and lost by the failure of the bank. This action was taken under the belief that Lancaster county was an insurer of money collected for the state until it was delivered to the state treasurer. In 1903 an action was brought by Lancaster county against the state under permission of the legislature to recover this amount. A demurrer to the

petition was sustained and the action dismissed. On appeal the judgment of the district court was reversed and the cause remanded to the district court. Afterwards, through mistake and inadvertence and without the knowledge of Lancaster county officials, the case was dismissed. After this was done the senate passed a resolution, which recited the fact of the dismissal of the case through inadvertence, authorized the county to prosecute another action for the same purpose, directed the attorney general to defend the suit on behalf of the state, and also provided: "Be it further resolved that no alleged inattention or failure to prosecute the said claim or suit heretofore instituted shall be urged to the prejudice of any claim, action, or suit that may be filed and instituted by the said county of Lancaster." The prayer is for a judgment for the money paid to the state by mistake. The answer denies that any part of the money deposited in the Capitol National Bank was state money; that any part of the money paid to the state treasurer was paid through inadvertence or mistake; and that it was through inadvertence or mistake that the former action was dismissed. It is further pleaded that at the time the money was paid there was due the state for state taxes collected over $46,000, and that this sum was paid by the county treasurer on the day alleged, without any knowledge or notice on the part of the state that the payment or any part thereof was made or claimed to be made from county funds. It is also pleaded that after the failure of the bank the county treasurer charged certain specific funds of the county with an amount equal to the amount lost, and that his action in charging said funds with the loss was known to the county board, and approved and ratified by acquiescence for more than nine years, and that all dividends paid by the receiver were applied as county money. At the close of the trial the court instructed the jury to return a verdict in favor of the plaintiff for the full amount of the claim. Judgment was rendered, and the state appealed.

The state contends that the petition shows on its face that the statute of limitations had run when the action

97 Neb 7

was begun; that the resolution of the senate pleaded in
the petition does not in express terms waive the running
of the statute of limitations; and that, even if it had done
so, the senate was without power to waive this defense,
since it is only one branch of the legislature; that under
section 1177, Rev. St. 1913, either branch of the legislature
may waive the defense of sovereignty, but that neither
house acting alone can waive other defenses. We can-
not take this view. Section 1180, Rev. St. 1913, provides:
"The court in which such action may be brought shall
hear and determine the matter upon the testimony ac-
cording to justice and right, as upon the amicable settle-
ment of a controversy, and shall render award and judg-
ment against the claimant, or the state, as upon the testi-
mony right and justice may require." Under this express
direction it is the duty of the court to brush aside techni-
cal defenses and to act in like manner as if the parties
were seeking to amicably settle their controversy, and "as
upon the testimony right and justice may require." Under
the circumstances of this case, it seems to us that the lapse
of time ought not to defeat a just claim.

It is next contended that the verdict is not sustained
by sufficient evidence. The testimony shows that the total
amount of money on hand with the county treasurer on
January 1, 1913, was $192,275.16; that of this amount
$60,964.60 had been collected for the state, which was 31.7
per cent. of the whole amount of money on hand. It is
shown that all money in the treasurer's hands was depos-
ited in the different depository banks in the city in the
name of S. W. Burnham, Treasurer; that when deposited it
was not divided into funds, and that the interest upon de-
posits was credited to the county. There is also testimony
that it is impossible in the collection of taxes from day to
day to separate the amount paid by each taxpayer into
separate funds or to trace to each taxpayer the origin of
the money deposited; but, in order to show that this fund
contained both state and county taxes, the county showed
the payment of all his taxes by an individual by check in
1892, the deposit of this check in the Capitol National

Bank, and that the money represented by this particular check was on hand in the bank at the time of the failure, and further proved that the custom was to deposit state, county, city, village, and other municipal district money received by the payment of taxes in gross, and to keep the funds separate by proper entries upon the books of the county treasurer. The state contends that since on the day of the bank failure there was due and on hand more than $150,000 over and above the amount on deposit in the Capitol National Bank, and since there was no provision in the statute for depositing state funds in a county depository, there is nothing to show that any part of the money deposited at that time was state money. The county takes the position that, since it is shown that the proportion of state funds on hand to the whole amount is 31.7 per cent., applying this proportion to the funds deposited in the Capitol National Bank, the state money in the bank at the time of the failure was $10,348.27. Section 6 of the depository statute (laws 1891, ch. 50) then in effect required the county treasurer to deposit in depository banks the money received by him "belonging to the several current funds of the county treasury." By section 11 the county treasurer is not liable for deposits made if the bank had given a bond as specified in the act. There can be no doubt that state, county, and other taxes collected by the county treasurer were "current funds belonging to the county treasurer," and were the funds which the law required him to deposit. We think there can be no question but that, where the county treasurer is relieved from liability upon his bond for the loss of funds deposited in such banks, the county itself (in the absence of extraordinary circumstances such as fraud, bad faith, or gross negligence in the selection of a depository and the approval of its bond) is free from liability to the state and to the various municipalities or districts for which it has collected taxes in the capacity of trustee. There is nothing in the statute which makes the county an insurer of such funds. Our attention has not been called to any decisions which hold to that effect.

We think it is immaterial whether all or only a part of the current funds of the county treasurer was deposited in the Capitol National Bank. We are of the opinion that, the treasurer having deposited one portion of the county funds in this particular bank and being relieved from liability to the county for the amount so deposited, the county having become unable by law to collect the money from the county treasurer, the state in the capacity of *cestui qui trust* could not require the county to pay that which it was unable to collect. Lancaster county was only bound to use the means provided by law for the safe-keeping of state funds in process of collection. At this time it had fulfilled its duty to the state as trustee by making the semiannual settlement with the state treasurer as required by the statute. The state insists that the books of the county treasurer's office show that the funds lost in the bank were charged to certain specified accounts, such as the general fund, bridge fund, insane fund, etc., and that by acquiescing in this charge the county is barred from commencing this suit. The testimony shows that these entries were made by the deputy county treasurer under the mistaken idea that the county was an insurer of state money. Under the generous provisions of the statute we think this does not constitute a defense. The county authorities followed the directions of the depository law with regard to the disposition of current funds collected by taxation. Through no fault of Lancaster county a portion of these funds was lost. By mistake, and without the knowledge of the county board, the county treasurer paid a portion of other county money to the state treasurer. In justice, equity, and good conscience, which is all that the statute authorizing this suit requires, that amount should be returned by the state to the county, and thus indirectly to the taxpayers of Lancaster county, who in the last analysis are the persons who suffer by the action of the state in retaining money to which it is not entitled.

The judgment of the district court is right, and is

AFFIRMED

ROSE, J., not sitting.