CARL SCHULZ, APPELLEE, V. CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

293 N. W. 409

FILED JULY 26, 1940. No. 30840.

R.. O. *Canaday* and *Beatty, Maupin, Murphy & Davis,* for appellant.

*J. C. Hollman, E. H. Evans* and *Urban Simon, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an appeal by the defendant district from a judgment of the district court, entered upon the verdict of the jury, for $11,534.25 with interest for some 374.17 acres of land taken by condemnation proceedings.

The defendant, Central Nebraska Public Power and Irrigation District, is a public corporation, commonly referred to as the Tri-County District, and is engaged in the construction of an on-river dam, known as the Kingsley dam, on the North Platte river north of Ogallala, designed to store about two million acre-feet of water, from which supply canals will transport the water to land to be irrigated,

and also to serve power houses and many transmission lines. In the construction of one of these power houses on a supply canal, the plans call for a regulating reservoir just above the power house, to standardize the flow of the waters through the turbines in the power house. Such reservoir will be constructed just east of the land taken from the plaintiff's ranch, and the raising of the water level will cause the water to back up in a canyon upon the plaintiff's land, and in draws, or fingers, leading back from said canyon.

The defendant district brought a statutory condemnation proceeding in the county court for Lincoln county to appropriate the necessary land from the south edge of plaintiff's ranch. The county judge appointed five disinterested freeholders as appraisers, to which appointment the plaintiff filed objections on the ground that the district and landowner had not failed to agree upon a price, and that the said district did not need the land, and in no event needed more than 150 acres, and that the balance was being sought condemned for reasons of expediency and caprice, and in excess and usurpation of the power of eminent domain.

On October 11, 1938, the appraisers filed a report that they had carefully inspected and viewed the real estate, and given hearing to all persons interested, and assessed the damages of the plaintiff and his wife for the appropriation of said real estate at the sum of $12,000, to which report the district filed exceptions, but paid the amount of the award to the county judge of Lincoln county, as required by law, to enable it to enter upon such land and erect and construct its contemplated works of internal improvement, and notified the court to withhold the disbursement of said award, or any part thereof, until the final determination of the appeal.

The Federal Land Bank of Omaha and the Federal Farm Mortgage Corporation filed in the proceedings in the county court notice of the fact that said corporations held first and second mortgages upon the real estate, and were entitled to have applied upon their mortgages all moneys paid in by

reason of said condemnation proceedings, and said corporations also filed answer and cross-petition in the district court, showing that the original mortgage was $8,000, bearing 5 per cent. interest, and the second mortgage given the land bank commissioner was in the sum of $4,000, with certain payments made thereon.

The verdict returned by the jury on June 10, 1939, consisted of five items, which made up the total verdict, as follows:

"For the 347.47 acres of pasture land taken......$6,949.40

"For the 26.7 acres of cultivated land taken......$1,068.00

"As damages to the pasture land in section 5 that consists of about 223.37 acres and that was not taken------------------------------------------------$1,116.85

"As damages to the pasture land in the East half of Sec. 32 and Southeast quarter of Sec. 29 that consists of about 270.1 acres and that was not taken------------------------------------------------$1,350.50

"As damages to the 209.9 acres of cultivated land and building and feed lot in the southeast quarter of Section 29 and east half of Section 32 ------------------------------------------------$1,049.50"

The motion for new trial set out 26 errors, and the brief presents these errors under four propositions of law. The question of fact as to the actual amount of damage suffered by the plaintiff appears to be determinative of the case.

The plaintiff's ranch reaches for three miles north and south. The land at the north end of the ranch is the east half of section 29, in which half-section are located all of the farm buildings, consisting of a barn, sheds, cribs, windmill, and a house, such buildings occupying some three acres of land adjoining 206.90 acres of cultivated land. Immediately to the south lies the east half of section 32, consisting of high, rough grazing land, or grass land. No part of the land in sections 29 or 32 is taken by the condemnation proceedings. To the south of the land lying in the east half of section 32 lies section 5, making the south end of the ranch

of the plaintiff. In this section there are 26.70 acres of cultivated land up in the northwest corner, and the rest of this entire section consists of canyons and rough, hilly grazing land, being hard clay, rather than sandy.

The land taken in the condemnation proceedings consists of the southern extremity of the three-mile strip belonging to this ranch. It is irregular in outline on the north side, and has some six fingers, or draws, extending to the north from the deep canyon, with steep sides, which will make up part of the reservoir when the work is completed. Of the 233.60 acres of the cultivated land in this ranch, only the small detached area of 26.70 acres will be taken, which lies two miles from the farm buildings, from which all the machinery to farm it must be taken.

Of the 840.94 acres of grazing land, 347.47 acres will be taken, leaving 493.47 acres remaining in the ranch, and if we include the three acres where the farm buildings are in section 29, the total land in the ranch was 1,077.54 acres, from which the district will take 374.17 acres, leaving 703.37 acres remaining of the ranch, all connected together the same as before, for all of the land taken by the district is off the south end of the ranch.

The plaintiff testified that he has owned this land since 1904, but has never lived on the place himself. At first it was rented out, but since 1917 the plaintiff has operated the place with hired help. The floor of the canyon taken is somewhat level, so that plaintiff was able to cut hay there some years, the last hay cut there being in 1935.

Plaintiff testified that during the winter time the canyon afforded some shelter and protection, and so he fed cattle there. He has one windmill and tank and cistern on the land which is taken. Plaintiff testified that his total damages for the taking of this were in the neighborhood of $28,000.

Jess Highberger, a farmer and stock raiser, living 17 miles southeast of North Platte, testified that the total damages of the plaintiff were from $30,000 to $33,000; that the remaining pasture land left with the ranch in section 5

was worth $25 an acre before the land at the south end of the section was taken, and is worth only $10 an acre now; that the 120 acres of valley land at the north end of the ranch which are not broken out was worth $70 before and is now worth only $30 an acre, and that the inconvenience of fencing the irregular borders of the canyon would cost ten times as much to fence as it would to build a straight fence. He testified that he saw the plaintiff's pasture land for the first time the day before he testified, and has only seen the farm land from the road; that he knows of no sales of farm land, and the opinions he gave were not based upon any sales. He valued the windmill and tank and cistern taken by the district as $1,200, but admitted on cross-examination that he did not know how deep it was to water, and that a windmill tower would cost around $40 and the tank $30 to $40 to build.

L. C. Craig testified that he lived 12 miles south of Brady; that he runs about 150 to 200 head of cattle, and cultivates 70 acres of land, his land being canyon land, located ten miles south and east of the plaintiff's land. He fixed the plaintiff's damages at over $32,000, but did not base his opinion on sales of land, for he said no land was being sold.

John Litchenberg owns a place 12 miles south and east of the plaintiff's place, and went over the land in question about a month ago; he said it was too rough to drive over all of it. He places the value of the 151 acres of canyon bottoms at $90 an acre, and said the farm land in section 29 was worth $95 an acre, but would only be worth $75 an acre after the district took off the pasture land at the south end of the ranch, and placed the total damages at over $33,000. He knew of no sales of land in that vicinity.

Louis F. Schulz, the brother of the plaintiff, testified that the total damages were $23,440. His land joins that of the plaintiff. He placed the bottom land in the canyon at $60 an acre, but does not recall of any such land ever selling for that price. R. E. Stenger testified the total damages would be over $24,000.

After the testimony of these witnesses the plaintiff rested,

and the defendant called Clarence Wilson, engineer in charge of construction of the supply canal, who had prepared exhibit No. 1, and testified to the situation of the canal reservoir, and that the water at the outlet end will be about 19 feet deep, but that there will be no construction work of any kind on the land taken.

H. C. Loutzenheiser testified that he had been handling real estate at Gothenburg for 30 years; that the pasture land taken by the district was worth $12.50 an acre; that the pasture land remaining in plaintiff's ranch north of that taken is worth $3.75 an acre less since the taking, and that the cultivated land at the north of the ranch would not be depreciated in value at all by the taking of the pasture land, and that the total damages of the plaintiff were $6,500. He testified on cross-examination that the land taken by the district does not remove all of the desirable protection for cattle feeding, or all the hay ground, but that taking the south end off the pasture may tend to unbalance the ranch for any one looking for a combination place.

A. D. Middleton testified in detail as to the value of all this land, and that the plaintiff's damages were over $7,000. William W. Findlay also placed the damages over $7,000. C. E. Pollard, engaged in the real estate business at Farnam, Nebraska, since 1911, placed the damages of the plaintiff at $8,169.50. John Ginapp placed the damages at between $6,500 and $7,500. G. W. Pollard, of Farnam, placed the damages at over $7,000, and Harry A. Johnson made the total damages $7,506.68.

If we examine the highest values estimated by plaintiff's witnesses, we find their average is about $29,500 for the plaintiff's damages, while the average of the lowest estimates by the district's witnesses is about $7,000. This court cannot ignore the evidence of any of these witnesses, although we may seriously question certain estimates.

This great discrepancy arises from several causes. The jury allowed $6,949.40, or over $20 an acre, for the canyons and rough, hilly land taken by the district, when many reliable witnesses testified that such land was worth not over

$12 an acre. Under no process of reasoning can this court find that the 207 acres of farming land at the north end has been reduced over a thousand dollars in market value by detaching some rough, hilly canyon land located some two miles to the south of it, when every one knows that the fertility and productiveness of this farm land are in no wise affected, and it will produce just as much wheat or other grain as it did before. It is also true that detaching 347.47 acres of rough, hilly pasture land from the extreme south end of a tract of 840.94 acres of similar land cannot, in the very nature of things, reduce the market value of the remainder nearly $2,500, even though the canyon taken afforded some shelter for feeding cattle in the winter.

The vast project being carried out by the defendant district with the assistance of federal funds is in the nature of a public project, which of necessity changes the plans of individuals whose lands are taken by right of eminent domain for the construction of canals and reservoirs required to complete this improvement, but each citizen holds his property subject to the paramount claims of the state, and our Constitution guarantees only that his property will not be taken without just compensation.

When it becomes necessary to take property for a public improvement, and all of the strict requirements of the law have been met, then the only question before the courts is: What is the loss to the owner?

This court has said: "The measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking." *McGinley v. Platte Valley Public Power and Irrigation District,* 133 Neb. 420, 275 N. W. 593.

"The just compensation, required by the clause in the Constitutions, to be made to the landowner, is to be measured by the loss occasioned to him by the appropriation." 2 Kinney, Irrigation and Water Rights (2d ed.) 1941, sec. 1081.

"The jury in fixing the damages sustained by a land-owner in consequence of the appropriation, or injury, of his property for a public use may take into account every element of annoyance and disadvantage resulting from the improvement which would influence an intending purchaser's estimate of the market value of such property." *Chicago, R. I. & P. R. Co. v. O'Neill*, 58 Neb. 239, 78 N. W. 521. See, also, *Sternberger v. Sanitary District No. 1*, 100 Neb. 449, 160 N. W. 740; *In the Matter of Furman Street*, 17 Wend. (N. Y.) 649; *Sandy Valley & E. R. Co. v. Bentley*, 161 Ky. 555, 171 S. W. 178.

But this court has also stated that the owner is not entitled to damages to the remainder of a large tract of land not taken under eminent domain, when damages to such land are of the same character as those suffered by all owners of land in that vicinity; also that, while the compensation for land taken by right of eminent domain is measured by its market value at the time taken, no evidence is admissible of its peculiar value for special reasons to its owner. *Wiles v. Department of Public Works*, 120 Neb. 689, 234 N. W. 918.

It is true that five appraisers and the jury of twelve men went upon and inspected this land, and practically agree upon the amount of plaintiff's damages. Plaintiff urges us to consider this fact in connection with the refusal of the trial court to sustain a motion for a new trial, and insists that, as this judgment is founded upon a fair, reasonable, and impartial verdict, it should not be disturbed by this court.

However, this court, after a careful examination of the entire record, believe that the jury were somewhat prejudiced in favor of the plaintiff, and reached a verdict which to this court appears to be unjustified by the facts shown by the evidence. In our opinion, the sober judgment of another jury would be based upon better reasoning, and the verdict and judgment are hereby set aside and reversed.

REVERSED.