STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE, V.
WILLIAM DILLON ET AL., APPELLANTS.
121 N. W. 2d 798

Filed May 31, 1963. No. 35369.

Orville Entenman, for appellants.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Asa A. Christensen, and James F. Petersen, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This action as it comes to this court is by the State of Nebraska, Department of Roads, plaintiff and appellee, against William Dillon and Margaret Dillon, husband and wife, defendants and appellants. It is one commonly referred to as an action in condemnation. It had its origin in a petition filed before the county judge of Sarpy County, Nebraska, for the appointment of appraisers to appraise the fee simple title damages to a tract of land and all improvements thereon within Sections 3, 4, and 9, Township 12 North, Range 10 East of the 6th P.M., Sarpy County, Nebraska, owned by one Eva I. Dillon. A more accurate description of the land is not required herein. This area was condemned by the plaintiff herein for public highway right-of-way purposes. The right to condemnation is not involved here.

A portion, if not all, of this described land was under an oral 1-year lease, at the time of condemnation, to the defendants on a division of crop basis whereby the defendants were to retain three-fifths of the crops pro-

duced and the owner was to receive two-fifths thereof as rent.

Appraisers were duly appointed and they made an appraisement which was filed on May 12, 1960. The damage to the land was appraised at $30,765.25, and the damage to the leasehold was appraised at $1,740. The appraisal of the damage to the land or any interest of Eva I. Dillon is of no direct concern on this appeal. The damage to the leasehold of the defendants alone is of concern here.

From this appraisal of the damage to the leasehold the plaintiff took an appeal to the district court as did also the defendants. On that appeal the plaintiff filed a petition to which petition the defendants filed an answer. It does not appear necessary to summarize the contents of the petition herein.

By the answer the defendants asserted the existence, the description, the duration, and the character of their leasehold interest, about which there is no dispute. They alleged that their leasehold was damaged by the plaintiff in the taking and damaging of land of Eva I. Dillon. They denied that their damage was only $1,740, but alleged that on the contrary it amounted to $4,000. They asked that damages be awarded to them in the amount of $4,000.

The case was tried to the court, a jury having been waived, and there judgment was rendered fixing the value of the defendants' damage at $414 and $40.44 interest, instead of $1,740, the amount of the appraisal. The elements involved in the computation of the amount of the damage do not directly appear. The trial was started June 4, 1962, and journal entry of the judgment was made June 12, 1962.

The defendants filed a motion for new trial which was overruled, from which ruling and the judgment the defendants have appealed.

By the motion for new trial it was asserted that the decision is not sustained by sufficient evidence; that

the decision is contrary to law; and that there were errors of law occurring at the trial duly excepted to by the defendants.

The errors asserted in the brief as grounds for reversal are that the court erred in overruling the motion for new trial; that the findings and judgment were inadequate and clearly wrong; and that the findings and judgment of the court are not sustained by sufficient evidence.

The record without dispute discloses that 43.13 acres of the leasehold area were condemned for right-of-way; that 1.51 acres were taken for temporary easement for haul roads; that 14.05 acres were taken for temporary easement for borrow pits; and that a permanent channel easement of 2.26 acres was taken. Evidence of the defendants was to the effect that 25 acres of the area taken which was suitable for production of corn would have produced 70 bushels of corn an acre of the value of $1 a bushel, three-fifths of which would produce in revenue $42 an acre, and that a proper deduction for production expense would produce for the defendants a net of $28 an acre, or $700. There was also evidence of necessary expenditures for fencing to permit the use of the leasehold during the term of the lease totaling $955. It was also estimated that there were 43 acres of pasture which would be unavailable for use by the defendants during the term of the lease on which the witness placed a value of $3 an acre, or $129. This testimony came from a witness whose name is Alois T. Gramlich. His total estimate in all areas of damage to the defendants was $1,784.

The defendant William Dillon was called as a witness in his own behalf and gave information as to the leasehold which included the terms, the description, the use to which the area was devoted, and the manner of operation with particular reference to suitability of area.

This witness testified that in his opinion the area suitable for the production of corn would have produced

75 bushels of corn an acre in 1960. No objection was made as to his competency as a witness. There was objection but only on the ground of relevancy, materiality, that the testimony was speculative, and that it did not reflect the proper measure of damages. He testified that corn sold for around $1 a bushel; that the productive value was $75 an acre, his share of which would have been $45 an acre; and that his necessary expense in production would have been about $6 an acre. His total estimate of the loss on account of the taking of the corn area was $975. His estimate in all areas of damage was $2,565. This is made up of the loss on account of inability to produce crops under the lease and $1,590 for fencing around borrow pits, removal of fencing, and other fencing which became necessary on account of the taking and the use of property by the plaintiff.

One witness testified on behalf of the plaintiff. This witness qualified as an expert in the evaluation of land taken such as was involved here and the deprivation of use, and particularly the effect upon the value of the deprivation of the right of use by a tenant upon lands leased for the current year where the rental for the leasehold was on a crop share basis.

As a basis for his calculations and conclusions he took into consideration, and correctly so, that the year involved started March 1, 1960, and ended February 28, 1961. He also took into consideration that April 27, 1960, was the effective date of condemnation. He also took into consideration the fact that after March 1, 1960, and before April 27, 1960, the defendants had done some work on the land taken on which they intended to plant corn. He considered that this date of April 27, 1960, was the date when the right of the defendants to use the land taken came to an end.

The total effect of the testimony of this witness was to say that the total damage of the defendants on account of loss of use of the leasehold was $215. The items making up this amount were loss on account of

borrow pits, $50; on account of haul roads, $45; disking, $70; and fencing, $50. He allowed nothing on account of the value of crops lost by prevention of use of land, and gave as his reason that under the circumstances the defendants were entitled to no damage for loss of crops. The plaintiff adduced no evidence in denial of the evidence of defendants of damage for loss of crops.

There are two phases of this case each requiring a measure of separate consideration. One of these relates to loss of profit caused by the prevention of production of prospective crops, and the other to specific items of damage which items were reasonably ascertainable with the value only uncertain. There was evidence of both parties on the latter phase. It was apparently on this phase that the judgment for $414 was rendered in favor of the defendants. This was far below the damage supported by their evidence. The judgment for $414 included $200 which had been previously received by the defendants. That amount was treated as payment on the judgment for $414.

If this presented the only question for consideration in the case it might be reasonably said that here was a situation involving a dispute in evidence and that on that account the defendants had not sustained a right to reversal of the judgment, which would end the controversy.

This however fails to resolve the other one of the two phases, namely the one dealing with the question of whether or not profits are allowable and, if so, by what measure, if there is a prevention of the production of crops on a leasehold which is in possession of the lessee and which has been taken or damaged by condemnation. This is the phase which has been presented at length by the briefs.

It appears proper at this point herein, because of the character of condemnation, to make clear some of its aspects. Condemnation as used in this case, as is of course well known, generally speaking, is the imple-

mentation of the power of eminent domain. Eminent domain, generally, is the right of a nation or state, or some other to whom the power is lawfully delegated, to take or condemn private property for public use. Ordinarily due compensation must be made for the property taken. See 29 C. J. S., Eminent Domain, § 1, p. 776.

In the State of Nebraska such a proceeding is controlled by the Constitution of the state. Article I, section 21, of the Constitution, is as follows: "The property of no person shall be taken or damaged for public use without just compensation therefor."

Under this declaration of right, of course, land may be taken. An interest in land without a taking of the land in its entirety may also be taken. If land of an owner other than land taken is damaged, the owner is entitled to be compensated for the damage. If land of an owner is taken on which the owner has growing crops for which he received no compensation as a part of the taking he is entitled to damage therefor. If land is under lease to a third party and he has not been paid for his rental on the lease, the owner is entitled to the damage therefor whether the rental is payable in cash or share in crop, if it be a crop rental lease. If, as is true in this case, land condemned is farm land and is under lease and in possession of the lessee on a share crop basis the tenant is entitled to recover damages for the loss of profits brought about by the condemnation.

No great difficulty is found in a consideration of the problems presented in most of these areas. As to the owner of land taken, he is entitled to recover the fair market value of the land taken. Schulz v. Central Nebraska Public Power & Irr. Dist., 138 Neb. 529, 293 N. W. 409.

In the case of remaining land damaged by a taking of other land the right of recovery is the difference between fair market value immediately before and immediately after taking. Schulz v. Central Nebraska Public Power & Irr. Dist., *supra*.

As to the question of damages on account of loss of right of production of crops by a tenant who occupies land on a crop rental basis, an apparent conflict of authority is presented in cases which have been considered by this court. There is no difficulty with the question of liability but only with admissibility of evidence and the measure of the right of recovery. The plaintiff contends that the cases hold that if the crops are not matured nothing can be allowed for the reason that allowance would depend on conjecture and speculation, and that evidence in proof of probable value at the time of maturity would be inadmissible. There is language in these cases to sustain this view.

These cases, when read in the light of their full context and the facts therein involved, and other rules laid down in other cases, do not however necessarily deprive a party of a right of recovery for use of the land in possession of a lessee which use was prevented by condemnation. These rules in actuality deprive of a right of recovery for use where there is a failure of evidence at the trial to reasonably prove the amount of the damage.

The plaintiff in substance urges that the true meaning of the language of the cases is that if the amount of damage cannot be proved at the time condemnation takes place no damage is allowable at all for the reason that at that time an award would have to rest upon conjecture and speculation.

One of these cases is Herpolsheimer v. Christopher, 76 Neb. 352, 107 N. W. 382, on rehearing, 76 Neb. 355, 111 N. W. 359, 9 L. R. A. N. S. 1127. It is a case which has no bearing directly on the character or quality of evidence necessary to prove damage where there is a claim of interference with the right to use of a leasehold by the lessee.

Another case is Shutt v. Lockner, 77 Neb. 397, 109 N. W. 383. The following appears in the opinion in this case: "Kitchen Bros. Hotel Co. v. Philbin, 2 Neb. (Unof.) 340; Shaw v. Hoffman, 25 Mich. 162, and other similar

cases are relied on by the plaintiffs in support of their claim that evidence of their profits, had they been allowed to cut and market the hay, should have been received by the court. In these cases the tenants were in possession of the leased premises, conducting an established business, when the breach and eviction occurred. By the breach and eviction they not only lost the benefit of their lease, but their business was also broken up and injured or destroyed, and this destruction of their business was allowed as an element of damage. That one may recover for an injury to a profitable business is not a question for debate, and, where a wrongful eviction by a landlord has this effect, damage may be recovered therefor. We do not wish to be understood as holding that evidence of the probable crop of hay the land would produce and the ordinary market value thereof might not be shown as facts to be considered by the jury in arriving at the value of the use of the land during the term, and if the rejected testimony had been offered for this purpose it would undoubtedly have been received. * * * What we do hold is that under the circumstances of this case prospective profits, which plaintiffs claim to have lost, was not a proper element of damage."

Special attention is directed to that part of the quotation wherein it is pointed out that in a case such as this evidence of probable crop which would have been produced and the ordinary market value thereof might be shown, and that receipt of such evidence would be proper.

Another of these cases is Philips v. Bossung, 108 Neb. 658, 189 N. W. 172. This case has no controlling significance. The case is one where a party brought action, not for damage in consequence of interference with the right of a lessee to use leased property, but on account of the failure of the owner of land to perform an oral agreement to enter into a lease of land. That case did not turn on any question of after-acquired evidence in the case of a lessee in possession. In that case there

was never a lease and there was no possession.

Still another case is Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200, which has relation to this subject. It, like the others commented on, cannot be said to bar a lessee of the right to recover damages in case of prevention of pro- duction of crops or the right to prove his damage in a case where crops have not been allowed to mature. The opinion contains the following declaration of prin- ciple and of right: "In such case we have also said in effect that under appropriate circumstances and con- ditions a tenant could recover damages to his unmatured crops then growing on the land and damaged by the taking, as well as damages to his leasehold estate then existent."

This negatives the theory that after-acquired evidence is inadmissible in proof of loss or damage to unmatured crops or the probable damage to crops of which produc- tion was deprived.

The late case of Patrick v. City of Bellevue, 164 Neb. 196, 82 N. W. 2d 274, contains the following which em- bodies on its face the theory of the plaintiff: "The meas- ure of damages to a growing crop that is destroyed by wrongful act or omission of another is the value of it at the time of destruction." This is substantially the same as language appearing in Pulliam v. Miller, 108 Neb. 442, 187 N. W. 925; Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350; and Gable v. Pathfinder Irr. Dist., 159 Neb. 778, 68 N. W. 2d 500. The same paragraph con- taining the above quotation also contains the following which appears to be defeative of this contention of the plaintiff: "Damage based upon the value of an unma- tured crop is analagous to profits lost and is governed by the same rule precluding recovery in cases of either uncertainty or remoteness. The question of whether damage based on the destruction of an unmatured crop is speculative is decided by whether there is sufficient data to determine with reasonable certainty the prob-

able value it would have had if it had matured. * * *
The proof is not sufficient to permit a determination,
with reasonable certainty, of the value of the crop of
corn that it is alleged was destroyed."

This latter language cannot be said to exclude evi-
dence of damage acquired after the condemnation tak-
ing. In truth another statement in this opinion carries
an inference that after-acquired evidence is admissible
in proof of damage to unmatured crops. It is the fol-
lowing: "There is no evidence as to the amount of corn
that was produced on adjoining land or land in that vi-
cinity during the year 1949."

In the case here there was evidence which was ad-
duced on the trial of the amount and value of corn pro-
duced on adjoining land, and attention has not been
called to any rule of law the effect of which renders this
evidence inadmissible or to be without probative value.

In Gledhill v. State, 123 Neb. 726, 243 N. W. 909, it was
said by quotation from 20 C. J., Eminent Domain, § 18,
p. 764: " 'The general rule is that damages, to be re-
coverable, must be direct and certain. Contingent, re-
mote, or speculative damages, such as the loss of specu-
lative profits, will not be allowed.' " This was approved
in Ricenbaw v. Kraus, *supra.*

Along with these general pronouncements it was made
clear that where there was competent evidence of the
damage to unmatured crops a judgment for that amount
was proper. See, also, Snyder v. Platte Valley Public
Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160
A. L. R. 1154; Ricenbaw v. Kraus, *supra.*

In Gable v. Pathfinder Irr. Dist., *supra,* is contained
language which clearly distinguishes what we have re-
ferred to as the general rule from the one applicable
where there has been damage rather than total destruc-
tion by a taking. There it is said: "The evidence indi-
cates that some of the beets were entirely destroyed and
some were only damaged. Under law there is a measure
for the assessment of damages for crops destroyed and

another where there has been damage but not destruction. * * *

"The measure of damages to growing crops destroyed by the wrongful act or omission of another is the value at the time of destruction. * * *

"The measure where a crop is injured but not rendered entirely worthless as a result of the acts or omissions of another is the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at the time injured less the expense of fitting for market that portion of the probable crop which was prevented from maturing."

In point of fact what the condemnee in the situation here would be entitled to receive from the condemner, if anything, is of no concern since that matter is not being litigated in this proceeding. The analysis of the right is of consequence however in the determination of the rights of the defendants as lessees of the condemnee.

If land which is condemned is under lease to a third party and by the taking or damaging the lessee is deprived of his use in whole or in part he is entitled to recover his damage from the condemner on the same character and quality of proof as would entitle the condemnee to recover. See, James Poultry Co. v. City of Nebraska City, 135 Neb. 787, 284 N. W. 273, on motion for rehearing, 136 Neb. 456, 286 N. W. 337.

The theory of proof necessary to sustain a right of recovery would be the same. In the instance of a right of recovery alone by the condemnee he would be entitled to the entire damage, whereas in the instance of a lessee of a condemnee the rule as to assessment of total damage against the condemner would be the same but the allocation could, and in instances such as the case here would, be different. See, Gledhill v. State, *supra;* State v. Platte Valley Public Power & Irr. Dist., 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196; Platte Valley Public Power & Irr. Dist. v. Armstrong, *supra.*

A practical application of the legal principles an-

nounced in these and other cases requires that it be said that these lessees in possession, who have a lease upon certain crop-producing land and upon pasture land, the rental on both of which is two-fifths of the crops produced with nothing in addition for the use of the pasture land, are entitled to receive as damages, if of course the right is sustained by sufficient evidence, in a case of taking or damaging by condemnation, three-fifths of the difference between what was produced on the tillable area and what would reasonably have been produced had there been no condemnation, less the reasonable cost of production of the whole, and plus the reasonable value of the pasturage of which they were denied. See Gable v. Pathfinder Irr. Dist., *supra.*

All of this is in clarification of earlier expressions of this court with a conclusion that in the case of damage to growing crops or loss of crops to be produced on a leasehold in possession of a lessee by condemnation where the damage may not be arrived at with reasonable certainty at the trial no damage may be awarded for loss of growing crops or for the deprivation of right to produce growing crops, but in cases where such damage may, on the basis of evidence, be reasonably arrived at at the time of trial the damage is the value of the crops if they had been allowed to mature less the reasonable cost of total production.

There is another cogent and compelling reason why this should be regarded as the proper attitude to be taken toward the question of proof of damages. Any other rule would have the effect of recognizing an unequivocal right guaranteed to the lessee by the Constitution of the State of Nebraska to damages but would deny any right to recover by reason of a prohibition of evidence necessary to sustain a recovery. The reference here is to the clear terms of Article I, section 21, of the Constitution.

In the case here the defendants adduced evidence which on its face was sufficient to cause these principles

to become applicable. They adduced evidence which this court has said in cases cited herein was competent proof of what the land taken would have produced. They adduced evidence of what the cost of production would have been if there had been no condemnation. The only considerations left in this area were the questions of credibility of witnesses, weight to be given to testimony, and a computation of results, which were questions of fact for the court in view of the fact that a jury had been waived.

The defendants adduced evidence of the value of use of the land not to be used for the production of crops as the plaintiff in effect admitted was, if proved, a basis for recovery of damages.

As already indicated the plaintiff adduced no evidence in refutation of that of the defendants which supported their theory of right of recovery of damage and the amount thereof under that theory, which, as is made clear, is approved herein.

While the record in the case does not in terms so disclose, it has become apparent that the district court in its decision failed to give any consideration to the theory on which the case was presented by the defendants, that is that they were entitled to damage on the basis of what they would have received had there been no condemnation. The only alternative to that conclusion is to conclude that the court simply disbelieved the evidence in support of the defendants' theory.

This alternative cannot in reason be accepted. The margin between the damage proved under the theory of the defendants, which proof was not counteracted by evidence, and the judgment which was rendered was too great to permit of a presumption or assumption that a matter of credibility of evidence was the cause. The only reasonably permissive conclusion is that the defendants were not accorded a trial on issues presented by the pleadings and supported by competent and ma-

terial evidence, and for that reason the judgment is clearly wrong.

In the light of this the judgment of the district court is reversed and the cause remanded for a new trial on all issues presented by the record.

REVERSED AND REMANDED.

BROWER, J., dissenting.

I have been unable to agree with the opinion adopted by the court in this case insofar as it holds that the measure of damages in condemnation to a lessee of land on a share rental basis upon which no crops have been planted is the difference between the value of what his share of the crops would have been at maturity had he planted them and the cost of production of the entire crop. It appears to me that the damages should be measured as of the day of the taking whether or not later developments might establish with a reasonable degree of certainty what would have been realized by the farming operation.

The usual rule of damages to a leasehold interest taken in condemnation is set out in 29 C. J. S., Eminent Domain, § 143, p. 988, as follows: "If a leasehold interest is taken, or injured, the lessee is entitled to a sum which will restore the money loss consequent to the taking or injury. This consists generally of the fair market value of the leasehold or unexpired term of the lease, and is said to be the difference between the rental value of the remainder of the term and the rent reserved in the lease."

This rule seems to me to be logical. In the case of cash rent if the lessee has agreed to pay more than the reasonable rental he has not been damaged by the taking. If he has procured a bargain and is paying less than the place is worth he is entitled to damages. It is computed by subtracting the agreed rental for the remaining term from the reasonable market value of the rental for that period.

If however the rentals are reasonable and proper for

the property taken he has suffered no loss of substance and should receive very little.

This rule was expressed quite clearly in State v. Platte Valley Public Power & Irr. Dist., 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196. In that case the lessee of a state school land lease was to pay as rent an amount equal to 6 percent of the appraised value of the premises. Provision was made for reappraisal at times during the term so that the 6 percent rentals would be varied in accordance with changing values. This court held that where the rent reserved equals or exceeds the rental value, the lessee has suffered no loss and cannot recover. The court held there could be no recovery for the unexpired term unless the lessee could prove the place should rent for more than 6 percent of the appraised value of the land.

I think the same reasoning can be applied in case of rents reserved in kind. If a two-fifths share is the going and reasonable rent for corn lands a lessee who has agreed to pay three-fifths rental is not damaged by reason of the taking by condemnation. If however he has been fortunate to have procured a lease for one-third of the crops grown he has something coming. If the rents are the reasonable value for the term on condemnation the term and future rent payments have abated together.

This general rule was followed last year by this court in the recent case of Ballantyne Co. v. City of Omaha, 173 Neb. 229, 113 N. W. 2d 486, which case in turn cited Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200, and other cases as previous authorities. An extensive note on the elements and measure of the lessee's compensation is set forth in 3 A. L. R. 2d beginning at page 286. The note on measure of damages generally commences at page 290 thereof. The great majority of the cases cited there, including the Nebraska cases, state that where a leasehold interest is taken in condemnation the measure of damages

is the market value of the unexpired term over and above the rent stipulated to be paid. The note however is appended to Korf v. Fleming, 239 Iowa 501, 32 N. W. 2d 85, 3 A. L. R. 2d 270, where the lessee was allowed to prove the value of the crops to be raised, much as is permitted in the court's opinion. It seems however to be at variance with most of the cases cited in the note and is to a considerable extent in conflict with an earlier Iowa case, Des Moines Wet Wash Laundry v. City of Des Moines, 197 Iowa 1082, 198 N. W. 486, 34 A. L. R. 1517.

The opinion adopted in the case before us discusses many of the previous cases decided by this court as to the proper measure of damages in cases where growing crops are injured or destroyed. In my opinion they do not reach to the exact question before us because in the present case no crops had been planted. We are dealing wholly with the measure of damages to be applied to the taking of the remainder of the term. If crops that had been actually planted had been damaged or destroyed the proper measure of damage in that situation would be before us.

The opinion discusses a great number of such cases and it shows quite plainly there is a conflict in some of them. I have read many of them and it appears to me that there are such conflicts, there is considerable amount of dicta in all of them, and that most of them do not cover the situation here presented. Many of them concern the measure of damages to be applied in cases involving eviction of a tenant by a landlord. Others involve trespassers or other tortfeasors. I am not satisfied the measure of damages in such cases should be applied in condemnation cases. The State is no wrongdoer. It simply takes over the property under its sovereign power of eminent domain and should pay for the damages for that which is taken at the time of the taking and not for future profits that might have been realized thereafter.

The landlord is paid for the market value of the property taken at that time and in case part only is taken, for the damage to the remainder not taken. The owner in such cases may show the crops produced in the past to prove the value of the premises when taken. He is not of course allowed to recover profits that might accrue in the future.

The opinion cites the case of Gledhill v. State, 123 Neb. 726, 243 N. W. 909. It was a suit to recover for land damaged by the State. The land however was not taken in condemnation. It was damaged by flooding by the State without any formal condemnation and the owner sought relief by action brought by him. Thus the damage had occurred and the flooded land laid fallow prior to any taking by the State. I doubt if it is the same situation as where future profits are in question after actual taking in condemnation.

Also the closing pages of the opinion in the cited case indicate the damages allowed stemmed in part at least from the statute affecting suits brought pursuant to a legislative resolution. The court, though holding the resolution did not create a liability which did not exist before its passage, does state the ordinary rules of law did not apply at least in the usual strict sense. In this respect the court, in the cited case at the conclusion of the discussion on damages, stated: "The senate authorized the suit to be instituted under authority of section 27-319, Comp. St. 1929. In such a case, section 27-322, Comp. St. 1929, provides: 'The court in which such action may be brought shall hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require.' In Lancaster County v. State, 97 Neb. 95, the court referring to these sections of the statutes said: 'Under this direction it is the duty of the court to brush aside technical defenses and to act in like man-

ner as if the parties were seeking to amicably settle their controversy.' In Commonwealth Power Co. v. State, 104 Neb. 439, this court said: 'The purpose of these sections is to take such cases out of the ordinary rules of law and to place their determination upon a much higher and broader ground, * * * and to make justice and right, as viewed by the court, the basis of its decision.' "

It is generally held that a loss of profits by reason of taking or a damaging of a leasehold interest for a public purpose are not recoverable as an element of damage. See, note hitherto referred to in 3 A. L. R 2d under section 20, page 321, where a considerable number of cases are gathered.

In the present case, I am unable to agree to a rule of law where the measure of damage to a leasehold estate includes loss of future profits as the opinion clearly holds.

The result is to allow damages for profits not earned including those arising from labor not performed, seed not sown, crops not harvested, and machinery not used.

Such a rule in my opinion should not be adopted and will result in trouble and confusion to the court in future opinions.

I think the rule as stated in Ballantyne Co. v. City of Omaha, *supra,* is right and should be adhered to. If the rule in the opinion in the case before us is adopted the owner of condemned land will get the full value of the land. Both the lessee and lessor will receive their proper consequential damages and the tenant would receive his future profits also. These future profits the State in my opinion should not be required to pay either to the lessor or the lessee.

It is to be noted that in Ballantyne Co. v. City of Omaha, *supra,* the court stated the constitutional provision requiring the payment of damages in condemnation did not change the rule with respect to the measure of damages.

Under the facts in the case before us as set out in the court's opinion, the amount of the consequential damages were in dispute in the testimony. The case was heard before the trial court whose findings stand in the same position as the verdict of the jury. Except for that part of the claimed damage that arises by reason of the profits on corn which was to be grown, the findings of the trial court could be sustained under the evidence. In view of the evidence outlined in the court's opinion, I think the trial judge's findings would have to be accepted and the judgment should be affirmed.

Judges Boslaugh and Carter authorize me to state that they concur in this dissent.