395 So.2d 557 (1981)
LEE COUNTY, Florida, a Political Subdivision of the State of Florida, for and On Behalf of the Fort Myers Beach Sewer District, Appellant,
v.
T & H ASSOCIATES, LTD., a Florida Limited Partnership; Douglas A. Biggar; Dennis Kelly, et al., Appellees.
No. 80-263.
District Court of Appeal of Florida, Second District.
February 11, 1981.
Rehearing Denied March 18, 1981.
Robert L. Donald and Stephen Dalton of Pavese, Shields, Garner, Haverfield, Kluttz & Cottrell, Fort Myers, for appellant.
William A. Keyes, Jr. of Stewart, Stewart, Jackson & Keyes, Fort Myers, for appellees Douglas A. Biggar and Dennis Kelly.
GRIMES, Judge.
This appeal points up the difficulty of determining a proper value for condemned land which contains growing crops.
*558 Douglas A. Biggar and Dennis Kelly leased two adjoining parcels of land in the Iona area of Lee County from two different owners in order to plant a crop of Jubilee watermelons. Both leases had one year rental terms beginning on June 1, 1977. During the summer of 1977, Biggar and Kelly prepared the leased property for planting by drilling two wells, digging drainage ditches, and clearing and plowing the ground. On November 8, 1977, Lee County filed suit to condemn 19.8 acres of the leased property as a site for sewage disposal facilities. Biggar and Kelly were not identified as having an interest in the property and did not receive notice of the suit. They planted watermelon seeds on the property on November 30 and December 1 and 2. The plants sprouted about ten days later. On January 6, 1978, the court rendered an order of taking which found that the county was entitled to the property in question. At this time, the watermelon plants were three or four inches high and had four to six leaves.
On January 10, 1978, Biggar and Kelly filed an answer alleging their interest in the property and asserting that they deserved compensation for the loss of the watermelon plants on the property taken. The county belatedly acknowledged that Biggar and Kelly were entitled to compensation, and the case went to trial on the issue of value as of the date of taking.
The county presented two witnesses. Henry H. Witte, who had been manager of the state farmers' market in Fort Myers for twenty-four years, testified that in his experience there had never been any trading on the market for a field of immature watermelon plants similar to that being farmed by Biggar and Kelly at the time of the taking. Paul Jacobs, a real estate appraiser, then gave his opinion that the value of the condemned leasehold was $12,210. He arrived at that figure by adding the lease rentals and production costs incurred by Biggar and Kelly up to the date of taking.
The defendants first recalled Mr. Witte and introduced a compilation of the 1978 daily watermelon price reports. Their next witness was Dr. Paul Everette of the University of Florida Agricultural Research Facility near Immokalee. He testified that within a reasonable degree of probability, the plants would have grown to maturity and that with the strong market which prevailed in April of 1978, Biggar and Kelly would have found it economical to conduct four cuttings which would have produced a yield of 50,000 to 60,000 pounds of melon an acre. Danny Moss, an experienced farmer in southwest Florida, said that in 1978 he had raised Jubilee melons approximately 18 miles from the defendants' fields and had harvested a crop in April which averaged about 52,000 pounds of watermelon an acre. He noted that the cold weather which had occurred in February of 1978 had not affected his crop. He estimated the probable yield on Biggar and Kelly's field at 50,000 to 55,000 pounds an acre.
Johnny Tucker, an agricultural chemical salesman, testified that based upon temperature and weather data occurring after the date of taking, he believed that the plants would have grown to full maturity by the time of the April harvest. Mr. Biggar also testified that the plants would have grown to maturity and that he would have harvested between 48,000 and 57,000 pounds an acre.
John Calhoun, a real estate appraiser, testified that a cost approach was not a proper method of valuation. He used a yield figure of 45,000 pounds an acre and assumed in accordance with evidence previously introduced that there would have been four cuttings of the melons. He took the actual market figures for each of the weeks in which the cuttings would have occurred and arrived at a figure of $117,612 for the gross value of the crop. He then subtracted the growing costs that Biggar and Kelly did not have to pay because of the taking and arrived at a figure of $99,400 as his estimate of value.
Throughout the presentation of the defendants' case, the county made timely objections to the evidence of weather and *559 market conditions occurring after the date of the taking. The county also complained that the defendants' method of valuation impermissibly took into consideration the loss of profits on the watermelons. The court overruled all of these objections and a like objection to the following jury instruction:
One method of arriving at the value of a growing crop at the time of taking, assuming that it had no market value, is, one, to estimate the probable yield had the crop not been destroyed or taken; two, calculate the value of that yield in the market; and, three, deduct the value and amount of labor and expense which after, and but for, the destruction or taking, would have been required to take care of and market the crop.
In determining the value of the watermelon crop, you may determine its value calculated on the basis of the average market price for the same crop during the season that the taking occurred.
If you find from the evidence that the crop was so immature that any estimate of value based upon prospective crop yield is purely speculative, then the measure of damages you should apply to the determination of just compensation due the owner is the rental value of the land, plus the cost of seeding and other expenses of production.
The jury returned a verdict in favor of Biggar and Kelly for $99,400. The court reduced this figure by the amount of money which the county had previously advanced to the defendants and entered judgment in the amount of $70,400 plus interest. The county appeals from this judgment.
At the outset, there are certain matters which have produced no disagreement or which, in any event, the parties have not made issues in this appeal. The county concedes that as lessees Biggar and Kelly are entitled to compensation for the value of their condemned leaseholds. Moreover, the county does not assign as error the court's decision to try the value of the leaseholds separately from the value of the underlying fee ownership. Finally, both parties have accepted January 6, 1978, as the proper valuation date.
The county raised four points on appeal.
I. DID THE TRIAL COURT ERR IN ALLOWING BIGGAR AND KELLY TO INTRODUCE EVIDENCE AS TO THEIR BUSINESS DAMAGES AND LOSS OF FUTURE PROFITS THEY SUFFERED FROM THE TAKING?
II. DID THE TRIAL COURT ERR IN ALLOWING EVIDENCE OF WEATHER AND ECONOMIC CONDITIONS AS THEY EXISTED AFTER THE VALUATION DATE?
III. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURORS THAT THEY COULD CONSIDER THE MARKET PRICE OF WATERMELONS SOME THREE MONTHS AFTER THE VALUATION DATE?
IV. WAS THE JURY'S COMPENSATION AWARD SUPPORTED BY COMPETENT, SUBSTANTIAL EVIDENCE?
However, because of the interrelationship of these issues, the county argued them together, and we will treat them in a like manner.
Most courts agree that when land containing growing but unmatured crops is condemned, the land and the crops should not be valued separately in determining the compensation due the owner. 4 P. Nichols, The Law of Eminent Domain § 13.21 (rev. 3d ed. P. Rohan 1979); Annot., 1 A.L.R.2d 879 (1948); 29A C.J.S. Eminent Domain § 173 (1965).[1] However, there is little uniformity *560 with respect to what evidence a jury may properly consider in weighing the effect of the presence of the crops upon the value of the property. Some courts have rejected evidence of anticipated revenue from unmatured crops as too uncertain and speculative. Papke v. City of Omaha, 152 Neb. 491, 41 N.W.2d 751 (1950); White v. Pennsylvania R. Co., 229 Pa. 480, 78 A. 1035 (1911). Other courts have allowed evidence of the net revenues which the crops could have been expected to bring had they been allowed to mature. Korf v. Fleming, 239 Iowa 501, 32 N.W.2d 85 (1948); State v. Dillon, 175 Neb. 350, 121 N.W.2d 798 (1963); In re Bensel, 158 App.Div. 41, 142 N.Y.S. 982 (1913), aff'd, 210 N.Y. 623, 104 N.E. 1126 (1914).
The county contends that we should hold that the court erred in admitting the testimony submitted by Biggar and Kelly because it amounted to evidence of loss of profits or business damage. Where less than the entire property is taken, section 73.071(3)(b), Florida Statutes (1979), permits the recovery of damages to an established business of five years standing located on the remaining lands. However, it is well settled that business damages or lost profits are not recoverable as part of the compensation for an entire taking. Jamesson v. Downtown Development Authority, 322 So.2d 510 (Fla. 1975); State Road Department v. Bramlett, 189 So.2d 481 (Fla. 1966); Douglass v. Hillsborough County, 206 So.2d 402 (Fla. 2d DCA 1968). Since we are dealing only with the value of that portion of the leasehold actually taken, the county argues that the jury should not have considered evidence of the prospective profits from the melons.
Significantly, the authorities cited by the county pertain to commercial business establishments. We believe that growing unmatured crops stand on a different footing. The reason why there can be no compensation for the loss to a business because of condemnation is that the placing of a fair value on the loss would permit consideration of too many intangibles, such as the extent to which the owner could have profitably transferred his business to a new location and the relative degree of his commercial skills. However, in the case of growing crops the prospective revenue comes from the property itself rather than from a business operated at a particular location. 4 P. Nichols, supra, at § 12.3121. This is a subtle distinction which is grounded upon the premise that until they reach the point of severance at maturity, the crops inhere in the land on which they are growing. Cf. City and County of Denver v. Quick, 108 Colo. 111, 113 P.2d 999 (1941), a case involving the condemnation of agricultural property in which the court explained the distinction between income from the land and income from a business conducted upon the land.
Here, there was no market for the leaseholds with the watermelons in a partial state of development. In order to arrive at "full compensation," it was necessary to consider other evidence bearing on value. Since the melons had a growing period of no more than one year,[2] we believe that the court did not err in allowing evidence on the prospective net revenue.[3] The evidence was at least as probative as that submitted by the county, which would simply reimburse the defendants for out-of-pocket costs and totally ignore their efforts in successfully bringing the crops to the stage of maturity they occupied when the land was taken.
The remaining issue with which we must deal is whether, in allowing evidence *561 which contemplated that the existence of growing crops would enhance the value of the land, the court erred in admitting testimony about economic and weather conditions which occurred after the order of taking. At first blush, the county makes a compelling argument on this point because condemned property is supposed to be valued as of the date of taking. Theoretically, the value of the property at the time of the taking ought to reflect both the promise and the risk inherent in the growing of the crops based upon past experience rather than events which have not yet occurred. But the recitation of what actually happened in the market and of the weather conditions which actually prevailed is in this instance the best possible evidence available. It removes from doubt any speculation over what the market might be, and it takes into consideration whether the crop would have survived the balance of the winter. If a devastating freeze had occurred shortly after the taking, the county ought to have been permitted to demonstrate that the crop would have been wiped out anyway. By the same token why shouldn't Biggar and Kelly be allowed to show that, in fact, their crop would have survived? Court disputes should be decided upon the most reliable evidence available. Therefore, it was proper to permit evidence of the economic and weather conditions which actually prevailed subsequent to the taking. We note that other courts have also allowed after-the-fact evidence of market conditions in cases of this kind. United States v. 576.734 Acres of Land, 143 F.2d 408 (3d Cir.1944), cert. denied 323 U.S. 716, 65 S.Ct. 43, 89 L.Ed. 576 (1944); Daily v. United States, 90 F. Supp. 699 (Ct.Cl. 1950).
The court's instructions were consistent with our analysis. Under these instructions, the jury was entitled to consider the defendants' evidence bearing on the value of the leasehold. The amount of the verdict was directly related to that evidence. Hence, no error occurred.
AFFIRMED.
SCHEB, C.J., and CAMPBELL, J., concur.
NOTES
[1] Ironically, the court below deviated from this rule by holding that a watermelon crop was personal property and therefore subject to valuation separate and apart from the realty. However, the county has not argued this as a point for reversal. In any event, in view of the conclusions we reach in this opinion, the ruling would appear to be harmless error because the jury was entitled to hear the same evidence, not for the purpose of placing a value on the crops themselves but in order to reach the value of the leasehold.
[2] In the case of plants with a growing life in excess of a year, such as trees grown for commercial cutting, the rule may be entirely different.
[3] In each case, the trial court always retains the discretion to decide whether the proffered evidence is sufficiently reliable to be admitted for jury consideration. See Buchman v. Seaboard Coast Line R.R., 381 So.2d 229 (Fla. 1980).