MONARCH CHEMICAL WORKS, INC., A CORPORATION, APPELLEE, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT.

277 N. W. 2d 423

Filed April 10, 1979. No. 41963.

Herbert M. Fitle, City Attorney, and James E. Fellows, for appellant.

August P. Ross and Ross & Mason, for appellee.

Heard before KRIVOSHA, C. J., McCOWN, CLINTON, and HASTINGS, JJ., and L. W. KELLY, JR., District Judge.

HASTINGS, J.

The defendant, City of Omaha, filed a condemnation proceeding in the county court of Douglas County seeking to condemn certain of plaintiff's property lying north of Woodland Road, east of 23rd Street, South of "J" Avenue, and west of 25th Street, all being within the general area designated as East Omaha. Plaintiff filed an action in the District Court seeking to enjoin this proceeding for the reasons that the property sought to be condemned was to eliminate incompatible land uses and the land to be acquired would be redeveloped for industrial and commercial purposes and that a city is prohibited by Article XIII, section 2, Constitution of Nebraska, from acquiring property for manufacturing or industrial enterprises by condemnation. The defendant alleged as its authority the Community Development Law, sections 18-2101 to 18-2146, R. R. S. 1943, which it claimed specifically authorized the City to proceed in condemnation. After trial, the District Court entered a decree finding that the taking of said property was not for a public purpose within the authority of the City of Omaha, and permanently enjoined the condemnation proceedings. Defendant appeals, assigning as errors the failure of the District Court to find that the taking of plaintiff's lands was for a public purpose and that plaintiff failed to show irreparable harm so as to be entitled to injunctive relief.

"In an appeal in an equity action, it is the duty of this court to try issues of fact de novo upon the record and to reach an independent conclusion thereon

without reference to the findings of the District Court." Biggerstaff v. Ostrand, 199 Neb. 808, 261 N. W. 2d 750 (1978).

Taking defendant's contentions in reverse order, we examine the claim of no showing of irreparable harm. As stated in Burger v. City of Beatrice, 181 Neb. 213, 147 N. W. 2d 784 (1967): "The rule is: This court is committed to the rule that injunction is a proper action in which to present the question of unlawful or improper exercise of the power of eminent domain." Although it has always been assumed that one having title to his land improperly taken suffers irreparable harm, we have never specifically so stated.

In Osborne v. Missouri Pacific R. Co., 147 U. S. 248, 13 S. Ct. 299, 37 L. Ed. 155 (1893), although denying relief because there had been no direct taking of an estate, but only the infliction of damages, the court stated: "Whenever the power of eminent domain is about to be exercised without compliance with the conditions upon which the authority for its exercise depends, courts of equity are not curious in analyzing the grounds upon which they rest their interposition.

"Equitable jurisdiction may be invoked in view of the inadequacy of the legal remedy where the injury is destructive or of a continuous character or irreparable in its nature; and the appropriation of private property to public use, under color of law, but in fact without authority, is such an invasion of private rights as may be assumed to be essentially irremediable, if, indeed, relief may not be awarded ex debito justice."

A similar theory is expressed in Canda Realty Co. v. Carteret, 136 N. J. Eq. 550, 42 A. 2d 859 (1945), where again the injunction was denied, this time because of laches. The court nevertheless laid down this rule: "I acknowledge that in such cases the principle upon which the court interferes does not

rest so dependently upon the destructive and irreparable nature of the threatened or actual trespass or the inadequacy of the legal remedy as it does upon the pre-eminent obligation to support the sacred constitutional inhibition against arbitrary action of functionaries clothed with the power of eminent domain * * *. The courage of judicial tribunals to safeguard constitutional rights and to prevent public authorities from using powers which the constitution has not bestowed upon them is an indispensable constituent of the art of self-government."

We therefore amplify the rule to read that injunction is a proper form of remedy in which to present the question of unlawful or improper exercise of the power of eminent domain, and proof of the attempt to so deprive a private citizen of an estate in his property makes the resulting damage irreparable and the legal remedy inadequate. There is no merit to defendant's second assignment of error.

This litigation arose out of defendant's utilization of Nebraska's Community Development Law, sections 18-2101 to 18-2144, R. R. S. 1943. In a general way, this law authorizes a city to define and acquire substandard or blighted areas and redevelop them in accordance with an approved redevelopment plan which in turn shall conform to the general plan for the municipality as a whole. Section 18-2103 (12), R. R. S. 1943, provides in part as follows: "Redevelopment project shall mean any work or undertaking in one or more urban renewal areas: (a) To acquire substandard or blighted areas or portions thereof, including lands, structures, or improvements the acquisition of which is necessary or incidental to the proper clearance, development, or redevelopment of such substandard or blighted areas; * * * (c) to sell, lease, or otherwise make available land in such areas for residential, recreational, commercial, industrial, or other use or for public use or to retain such land for public use, in accordance with a rede-

velopment plan; * * * (d) to acquire real property in an urban renewal area which, under the redevelopment plan, is to be repaired or rehabilitated for dwelling use or related facilities, repair or rehabilitate the structures, and resell the property; * * *."

Section 18-2103(13), R. R. S. 1943, goes on to say: "Redevelopment plan shall mean a plan, as it exists from time to time for one or more urban renewal areas, or for a redevelopment project, which plan (a) shall conform to the general plan for the municipality as a whole; and (b) shall be sufficiently complete to indicate such land acquisition, demolition and removal of structures, redevelopment, improvements, and rehabilitation as may be proposed to be carried out in the urban renewal area, zoning and planning changes, if any, land uses, maximum densities, and building requirements;".

On June 24, 1975, the Omaha city council passed an ordinance adopting a Community Development Master Plan which projected the area within which plaintiff's land is located under the zoning classification of "New In-Town Industrial Parks." Following that, on the 9th day of March 1976, the council by resolution approved the East Omaha Redevelopment Plan. This plan, in accordance with the Master Plan, provided for redeveloping the entire East Omaha area into a nonresidential neighborhood which would "result in retention of the existing job-providing, revenue-producing industries within the area and avoid their expensive relocation costs. It will also provide the city with marketable commercial and industrial sites which, upon their resale, will enable the city to recapture some of its development costs while at the same time ensuring that East Omaha will be a viable, tax producing area in the future." See East Omaha Redevelopment Plan, Report No. 181, p. 00012. Continuing, the plan provides: "It should be noted that not all property located within the East Omaha Study Area will be acquired by the

city. Property owned by resident industries and businesses for their future expansion and vacant property owned by investment corporations will not be purchased." Although the original plan did not specifically authorize the use of the power of eminent domain, it could be assumed that it was contemplated in the future if all land scheduled for acquisition had not been acquired by voluntary means by the end of 1978.

At this point it might be well to refer to the evidence presented in the District Court relating to the present ownership and use of the land sought to be condemned. Marvin Walenz, president of Monarch Chemical Works, Inc., the plaintiff in this action, testified that the land was owned by the corporation, and that although not presently utilized in its refining process, this vacant land was necessary in its continued operation. "It is so necessary that if we don't have it, we have to sell it and move the remaining plant to another location." Presently, there are plans to build two 4,000,000-gallon storage tanks on the particular property to take care of off-season purchase of construction-type asphalt. Although on cross-examination it was brought out that Monarch had neither firm financing nor structural drawings, there seems to be no evidence contradicting the claim that this is "property owned by a resident industry for its future expansion" within the description of property not to be acquired by the City of Omaha as set forth in its East Omaha Redevelopment Plan.

Sometime after approval of the redevelopment plan, the State of Nebraska selected plaintiff's property as the site for the proposed minimum-medium security complex, and commenced negotiations with the defendant to acquire the property by eminent domain proceedings under the East Omaha Redevelopment Plan and sell the same to the State of Ne-

braska. As a consequence of those negotiations, by resolution passed September 28, 1976, the City of Omaha amended the East Omaha Redevelopment Plan to specifically provide for the acquisition of nonvolunteer property, commencing with the year 1979, except that special authorization was given to acquire, by January 1, 1977, if possible, land for the minimum-medium security facility. The resolution made the use of the power of eminent domain for this particular area subject to a written contract with the State of Nebraska proposing to proceed with this site for its project. On March 15, 1977, such a contract was executed which provided for the state to pay to the City of Omaha the total acquisition and relocation costs not to exceed $495,000 and as to any excess requirements, the City agreed to absorb those costs. It might be noted in passing that no other amendment was made to the redevelopment plan, i.e., to change the purpose of the plan to develop a portion of the East Omaha area into a site for a penal complex or to change the provision that "property owned by resident industries for their future expansion * * * will not be purchased."

Some 8 months after the resolution of September 1976, the defendant City of Omaha filed the condemnation action which prompted the present proceedings.

The issue here is not whether a city has the power of eminent domain to acquire real estate for a public use and to later sell portions thereof no longer needed by it, as claimed by the defendant. Clearly it has such power under the provisions of section 14-374, R. R. S. 1943. Nor is there any problem with plaintiff's claim that Article XIII, section 2, Constitution of Nebraska, prohibits a city from using the power of eminent domain to acquire and develop sites for manufacturing and industrial sites. The acquiring of property under the Community Development Law depends upon a very different public pur-

pose than that expressed in the above-quoted constitutional provision. Also, we need not concern ourselves with plaintiff's contention that the condemnation must be for a "public use of the municipality," as stated in Burger v. City of Beatrice, 181 Neb. 213, 147 N. W. 2d 784 (1967), because by the plain meaning of the redevelopment plan and contract with the State of Nebraska, the property is ostensibly being acquired as part of the redevelopment plan and is being sold as "marketable commercial and industrial sites which, upon their resale, will enable the city to recapture some of its development costs while at the same time ensuring that East Omaha will be a viable, tax producing area in the future." See East Omaha Redevelopment Plan, Report No. 181, as amended September 7, 1976. This is as it must be because there is no contention on the part of defendant that it seeks to acquire this property for a public municipal use as a penal complex, but rather as a part of its redevelopment plan.

Although there are no Nebraska cases on the subject, there is no longer any real controversy over the proposition that the acquisition of lands for slum elimination, slum prevention, rehabilitation of substandard areas for low-cost housing, community development, or industrial development are legitimate public uses. In Romeo v. Cranston Redevelop. Agency, 105 R. I. 651, 254 A. 2d 426 (1969), that court said: "We therefore hold that the clearance, replanning, redevelopment, rehabilitation and improvement of an 'arrested blighted area' as that term is set forth in the statute constitutes a public use and is constitutionally permissible." To the same effect is Chi. Land Clearance Com. v. White, 411 Ill. 310, 104 N. E. 2d 236 (1952): "Quite appropriate is this statement appearing in the Zurn case [389 Ill. 114], at page 129: 'The redevelopment of slum and blight areas, * * * constitutes a public use and a public purpose, regardless of the use which

may be made of the property after the redevelopment has been achieved.' ''

Although the necessity and expediency of a taking of private property for a public use is a legislative question, whether the intended use is in fact a public use is a judicial question. ''The sovereign nature of the power of eminent domain is such that the function of the courts is limited to a determination of whether constitutional provisions have been violated, and if they have not, the right of the legislature to exercise it in any manner it sees fit must be sustained. If the property be taken irregularly, or if the taking is not for a public purpose, the owner can proceed against the taker the same as any other trespasser by injunction, ejectment, or any other available remedy.'' May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448 (1945). The taking of substandard or blighted areas by a city for redevelopment and resale in accordance with an approved redevelopment plan which is in conformity with a general plan for the municipality as a whole, all as provided for in the Nebraska Community Development Law, § 18-2101 et seq., R. R. S. 1943, is a proper public use for a municipality.

However, it would seem apparent that the acquisition of property whether by voluntary methods or by eminent domain to carry out a redevelopment plan must be provided for in and be in accordance with such plan. As stated in David Jeffrey Co. v. Milwaukee, 267 Wis. 559, 66 N. W. 2d 362 (1954): ''The act is directed against areas, and not individual structures. The public, through the municipality, acquires the land in the area and uses it for its own protection against the menace which threatens. It also, by plan, provides for the redevelopment of the area to assure against repetition of blight. It is as much a public purpose to prevent recurrence of blight as to eliminate it. As stated by the learned trial court in its opinion of record herein: '* * * Hav-

ing acquired the lands, it is the municipality, the public, which will use the lands in the construction of streets, the installation of utilities and other site improvements, *all in accordance with an approved redevelopment plan.' "* (Emphasis supplied.)

The authority to acquire plaintiff's land was not provided for in the redevelopment plan in order to carry out the purposes of the plan, but solely as an accommodation to the state to acquire a site for a penal complex which had nothing to do with the redevelopment plan. As a matter of fact, the redevelopment plan itself expressly denied the need or purpose of acquiring land which, like the plaintiff's, fell within the definition of "Property owned by resident industries for their future expansion." The attempted condemnation of plaintiff's lands not being provided for as a part of the redevelopment acquisition plan, its acquisition was not for a public purpose and the trial court was correct in issuing an injunction against the proceedings, and its judgment is affirmed.

AFFIRMED.