REQUESTED BY: Senator Stan Schellpeper Nebraska State Legislature
You have requested the opinion of this office regarding several issues involving the power of municipalities and community redevelopment authorities to declare an area blighted or substandard for purposes of a redevelopment project. Specifically, you posed the following questions:
1. Do municipalities or community redevelopment authorities have the authority to use eminent domain for redevelopment purposes to acquire property occupied by a business or farm?
2. Under current law, may property which is physically occupied by a business entity or physically occupied by a farm for use in agricultural production be declared blighted over the property owner's objection?
3. May property be declared blighted without first holding a public hearing?
The Nebraska Community Development Law (Neb. Rev. Stat. §§ 18-2101
to 18-2144 (1991)), which you cited to in your letter, is the primary law controlling the area in question. The circumstances necessary for an area to be considered "substandard" or "blighted" are set out in Neb. Rev. Stat. §§ 18-2103 (10) and (11) (Cum. Supp. 1994), respectively. Under the Nebraska Community Development Law, the governing body of a city has the authority to declare an area to be substandard or blighted.
It appears that under current law, municipalities or community redevelopment authorities[1] do have the right to exercise eminent domain proceedings to acquire property occupied by businesses or farms for redevelopment purposes.
The Nebraska Community Development Law specifically grants cities and community redevelopment authorities the right to exercise eminent domain powers. Neb. Rev. Stat. § 18-2107 (4) (Cum. Supp. 1994) allows a community redevelopment authority to acquire any real or personal property, along with any improvements thereon, by eminent domain. In addition, Neb. Rev. Stat. § 18-2122 (1991) states:
 An authority shall have the right to acquire by the exercise of the power of eminent domain any real property which it may deem necessary for a redevelopment project for its purposes under the provisions of sections 18-2101
to 18-2144 after the adoption by it of a resolution declaring that the acquisition of the real property described therein is necessary for such purposes. The procedure to condemn property shall be exercised in the manner set forth in sections 76-704 to 76-724.
 When an authority has found and determined by resolution that certain real property described therein is necessary for a redevelopment project or for its purposes under the provisions of sections 18-2101 to 18-2144, the resolution shall be conclusive evidence that the acquisition of such real property is necessary for the purposes described therein.
Under current law, however, a community redevelopment authority must meet certain procedural requirements before it may exercise eminent domain powers. Examples of such requirements are: that the city has promulgated a general development plan for the city, the city has declared the area under consideration to be substandard or blighted, and the city has approved the specific redevelopment plan recommended by the community redevelopment authority.
The Nebraska Supreme Court has upheld the use of eminent domain when used pursuant to the Community Development Law. InMonarch Chemical Works, Inc. v. City of Omaha, 203 Neb. 33,277 N.W.2d 423 (1979), the City of Omaha attempted to obtain land owned by Monarch Chemical Works by eminent domain, pursuant to the Nebraska Community Development Law. The city had passed a redevelopment plan which called for acquisition of property in east Omaha for redevelopment into industrial sites. The chemical company brought an injunction action to prevent the taking, claiming Omaha was taking land for manufacturing purposes, prohibited by Article XIII, § 2 of the Nebraska Constitution.
The Court found that clearly a city has the power of eminent domain to obtain real estate to be used for a public use, and the city could sell property it later found it did not need. The Court cited to Neb. Rev. Stat. § 14-374 (1991) as the authority which provided a city with such powers. Regarding the chemical company's claim that Article XIII, § 2 of the Nebraska Constitution, prohibited the city's action, the Court stated that the Community Development Law depended on a very different public purpose than that expressed in Article XIII, § 2. It found that a city was not prohibited from exercising its eminent domain powers to acquire and develop sites for manufacturing and industrial sites.
The Court also addressed the viability of the Nebraska Community Development Law itself. It held:
 The taking of substandard or blighted areas by a city for redevelopment and resale in accordance with an approved redevelopment plan which is in conformity with a general plan for the municipality as a whole, all as provided for in the Nebraska Community Development Law, § 18-2101 et seq., R. R. S. 1943, is a proper public use for a municipality.
Monarch at 41, 277 N.W.2d at 427.
The Court went on to note that whether the property was obtained voluntarily or by eminent domain, the acquisition must be provided for and in accordance with the city's redevelopment plan.
Assuming that an area which is physically occupied by a business or farm meets the statutory definition of substandard or blighted, as long as the municipality adheres to all procedural requirements there do not appear to be any obstacles preventing a municipality or community redevelopment authority from exercising its eminent domain powers to acquire the property. The fact that a business or farm physically occupies the property would not seem to affect the determination.[2]
Regarding the issue of whether business or farm property may be declared substandard or blighted over the property owner's objection, the evidence indicates that property owners have very limited standing to contest the determination that their property is blighted or the exercise of eminent domain over their property. Property owners can only object regarding procedural irregularities, that the taking is actually not for a public use, and to contest the amount of compensation. If a city strictly complies with all procedural requirements, and if the property meets the definition of substandard or blighted, the evidence indicates a property owner has no right to prevent property from being declared blighted or the exercise of eminent domain merely because he or she objects to it.
In Schulz v. Central Nebraska Public Power and IrrigationDistrict, 138 Neb. 529, 293 N.W. 409 (1940), the case involved the taking of farm and ranch land to create a dam reservoir near Ogallala, Nebraska. In its decision, the Court stated, "When it becomes necessary to take property for a public improvement, and all the strict requirements of the law have been met, the only question before the court is: What is the loss to the owner?" Id. 536, 293 N.W. at 413.
In May v. City of Kearney, 145 Neb. 475, 17 N.W.2d 448 (1945), Mr. May (a city resident) and a public power district sued to prevent the city from acquiring the public power district's electric light and power plant. The Nebraska Supreme Court, in addressing the issue of how the due process clause applied to the exercise of eminent domain, adopted language set out in People v.Adirondack Ry. Co., 160 N.Y. 225, 54 N.E. 689, and found that an individual has a right to his or her day in court regarding the issue of compensation, but does not have the right to challenge the state's appropriation of the property unless a statute requires it.May at 502, 17 N.W.2d at 463. The Court went on to hold that if property is taken irregularly, or if it can be shown the taking is in fact not for a public purpose, the owner can prevent the taking through injunction, ejectment, or any other available remedy. This same language was cited by the Court in the Monarch case.
As long as the requirements set out in Neb. Rev. Stat. § 18-2103(11) (Cum. Supp. 1994) are met, it does not appear that property owners have any right to prevent their property being declared blighted or the condemnation of the land through eminent domain proceedings.
The issue of whether property may be declared blighted without first holding a public hearing is closely related to the previous question. Just as with property owners' right to object to their land being declared blighted, the only requirements regarding public hearings prior to property being declared blighted is that which is statutorily provided.
Although the Nebraska Community Development Law contains public hearing provisions, it does not require hearings prior to property being declared substandard or blighted. The purpose for hearings which are required by the Community Development Law is to allow all interested parties an opportunity to express their views regarding the redevelopment plan recommended by the community redevelopment authority to the governing body of the city. See Neb. Rev. Stat. § 18-2115 (1991). The community redevelopment authority's plan details how a blighted area should be redeveloped.
The Nebraska Community Development Law also grants community redevelopment authorities the power to conduct hearings on any matter material for its information. Neb. Rev. Stat. § 18-2107 (7) (Cum. Supp. 1994). The statute allows the hearings to be either public or private. The hearings provided for in this statute appear to be discretionary, however. The purpose is to allow the community redevelopment authority to gather evidence and make sure it is fully informed on any given topic. The statute does not contain language mandating such hearings be held, or if they are held, when they will be convened. The hearings contemplated by the statute appear to be information-gathering meetings for the convenience of the authority's members, not as a procedural requirement.
The Nebraska Supreme Court has upheld statutes which provided for no or very limited hearings. In May v. City of Kearney,145 Neb. 475, 17 N.W.2d 448 (1945) (previously cited), the statute under which the city acted did not provide for notice and hearings regarding the legality of the proceeding. Mr. May and the public power district alleged that the city's condemnation action violated due process.
The Court disagreed that a statute must provide for notice and hearing. The Court stated, "[A] statute providing due process on the matter of just compensation and which is silent on the question of affording a hearing on the right to take meets all the requirements of due process under the state and federal Constitutions." Id. at 505, 17 N.W.2d at 464.
The Court held that the fact a statute did not provide for notice and hearing concerning the state's right to take property did not violate due process. In fact, the Court in May went on to state that a non-statutory mandate requiring notice and hearing "would constitute an unwarranted limitation on the sovereign right of the state . . . to take private property for a public use." Id. at 506, 17 N.W.2d at 465. There is other case law supporting the proposition that constitutional due process does not guarantee property owners the right to a hearing, so long as the owner is afforded the opportunity to remedy the situation in court. Seealso Chicago, Burlington Quincy Railroad Co. v. State ofNebraska, 47 Neb. 549, 66 N.W. 624 (1896), aff'd 170 U.S. 57,18 S. Ct. 513 (1898).
Although the available case law deals primarily with a property owner's rights regarding condemnation in eminent domain proceedings, it is clear that his or her due process rights are limited to those which are statutorily provided. Having property declared blighted, in the context of your question involving the Nebraska Community Development Law, is one of the first steps a city would take in acquiring property for a public purpose.
In summary, property owners are quite limited in the remedies available to them when a municipality declares their property as substandard or blighted pursuant to the Nebraska Community Development Law. So long as a city and its community redevelopment authority strictly follow statutory procedural requirements, the city has the right to exercise eminent domain, notwithstanding a property owner's objection. The fact that a business or farm physically occupies the property would go to the amount of compensation, not the right of the city to acquire the property. To prevent the taking, the property owner would have to find a procedural irregularity, either in a statute or in the city's redevelopment plan, or be able to articulate why the taking is in fact not for a public purpose. Case law indicates public hearings are not required before property can be declared blighted, absent a statutory mandate. It is only necessary that the property meet the statutory definition of substandard or blighted property, and that the property owner can address any grievances in court.
Sincerely,
 DON STENBERG Attorney General
 Timothy J. Texel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved by:
Don Stenberg 
Attorney General
[1] Community redevelopment authorities are basically entities created by a city to prepare and carry out redevelopment plans for areas which have been declared substandard or blighted.
[2] The presence of a business or farm would only affect the amount of compensation due the property owner, not the city's right to acquire the property.