TO: Senator Heath Mello Nebraska Legislature
FROM: Jon Bruning, Attorney General L. Jay Bartel, Assistant Attorney General RE: LB 54 — Whether Legislation Establishing the Base Year for Tax-Increment Financing of Redevelopment Projects as the Year Prior to Commencement of Rehabilitation, Acquisition, or Redevelopment is Consistent with Neb. Const. Art. VIII, § 12.
Dear Senator Mello:
Neb. Rev. Stat. § 18-2147(1) (2007) provides that "[a]ny redevelopment plan . . .may contain a provision that any ad valorem tax levied upon real property in a redevelopment project for the benefit of any public body shall be divided, for a period not to exceed fifteen years after the effective date of such a provision by the governing body. . . ." LB 54 proposes to amend § 18-2147(1) to provide that the taxes on real property in a redevelopment project would be divided "for a period not to exceed fifteen years after the governing body enters into a redevelopment contract. . . ." LB 54, § 1. AM218 would amend LB 54 to provide, in part, that real property taxes "for a redevelopment project established for the purpose of rehabilitating, acquiring, or redeveloping substandard or blighted property" would be divided "for a period not to exceed fifteen years after the commencement of such rehabilitation, acquisition, or redevelopment,. . . ." AM218, § 2. Your question is whether the changes proposed to § 18-2147(1) by AM218 are consistent with Neb. Const. art. VIII, § 12, the constitutional provision authorizing cities and villages to incur indebtedness for the purpose of rehabilitating, acquiring, or redeveloping substandard and blighted property, and pledge *Page 2 
for the payment of bonds issued for that purpose, for a period not to exceed fifteen years, taxes levied on property in the project area that are "in excess of the assessed valuation of such property for the year prior to rehabilitation, acquisition, or redevelopment."
A. Community Development and Tax Increment Financing ["TIF"]
The Community Development Law, Neb, Rev, Stat. §§ 18-2101 to 18-2144
(2007 and Cum. Supp. 2010) generally "authorizes a city to define and acquire substandard or blighted areas and redevelop them in accordance with an approved redevelopment plan which in turn shall conform to the general plan for the municipality as a whole." Monarch Chemical Works, Inc. v. City of Omaha, 203 Neb. 33, 36, 277 N.W.2d 423, 425 (1979). Cities or villages may create a division or department to function as a community development agency, or may establish a Community Redevelopment Authority ["CRA"] to prepare and carry out redevelopment plans for areas which have been declared substandard and blighted. Neb. Rev. Stat. §§18-2101.01, 18-2102 (2007) and 18-2102.01 (Cum. Supp. 2010). Redevelopment projects may be funded by the use of "Tax Increment Financing" ["TIF"], which allows the increased property taxes generated by the redevelopment to be used to finance the redevelopment. Neb. Rev. Stat. §§ 18-2147 to 18-2153 (2007); 350 N.A.C. § 18.001.01. After a redevelopment project is approved, the city or CRA may issue TIF bonds to finance the project. A redevelopment plan may provide that real property taxes in a redevelopment project shall be divided "for a period not to exceed fifteen years after the effective date of such provision. . . ." Neb. Rev. Stat. § 18-2147(1) (2007). Taxing entities can levy taxes on real property in the project on the redevelopment project valuation, also known as the base value, which means "the assessed valuation on the taxable property in a redevelopment project last certified to the political subdivisions in the year prior to the effective date of the provision authorizing the dividing of ad valorem tax pursuant to" Neb. Rev. Stat. §§ 18-2103(21) and 18-2147 (2007). 310 N.A.C. § 18.002.15. The portion of tax assessed on real property in the redevelopment project in excess of the base value for the current year, the redevelopment project excess valuation, is accounted for separately and used to pay off the financing or debt incurred for the project for a period not to exceed fifteen years. Neb. Rev. Stat. §§ 18-1247(1)(b) (2007). Notice of the provision for dividing taxes must be sent by the city or CRA to the county assessor on or before August 1 in the calendar year that the division of real property taxes is to become effective. Neb. Rev. Stat. § 18-2147(3) (2007); 350 N.A.C. § 18.003.03.
B. Constitutional Authorization of TIF
In 1978, a constitutional amendment was presented to the voters to approve authorizing cities and villages to issue bonds and other evidence of indebtedness to acquire and redevelop substandard and blighted property in a redevelopment project, and to pledge and apply to pay off such indebtedness all taxes levied on the value of real property in excess of the prior year's valuation on property in the project area for a period not to exceed fifteen years. 1978 Neb. Laws, LB 469, § 1. The amendment was adopted and became Neb. Const. art. VIII, § 12. In 1984, this provision was amended *Page 3 
to allow cities and villages to incur indebtedness to rehabilitate substandard and blighted property, in addition to permitting acquisition and redevelopment. 1984 Neb. Laws, LR 227. An amendment altering the financing provisions relating to redevelopment of substandard and blighted property by further defining the project area was approved in 1988. 1987 Neb. Laws, LR 11. Neb. Const. art. VIII, § 12, currently provides as follows:
 For the purpose of rehabilitating, acquiring, or redeveloping substandard and blighted property in a redevelopment project as determined by law, any city or village of the state may, notwithstanding any other provision in the Constitution, and without regard to charter limitations and restrictions, incur indebtedness, whether by bond, loans, notes, advance of money, or otherwise. Notwithstanding any other provision in the Constitution or local charter, such cities or villages may also pledge for and apply to the payment of the principal, interest, and any premium on such indebtedness all taxes levied by all taxing bodies, which taxes shall be at such rate for a period not to exceed fifteen years, on the assessed valuation of the property in the project area portion of a designated blighted and substandard area that is in excess of the assessed valuation of such property for the year prior to such rehabilitation, acquisition, or redevelopment.
 When such indebtedness and the interest thereon have been paid in full, such property thereafter shall be taxed as is other property in the respective taxing jurisdictions and such taxes applied as all other taxes of the respective taxing bodies.
 C. Analysis
Your question is whether it is permissible under art. VIII, § 12, for the Legislature to amend § 18-2147(1) to provide that the taxes on real property in a redevelopment project are to be divided "for a period not to exceed fifteen years after the governing body enters into a redevelopment contract, . ." (LB 54, § 1), or to amend § 18-2417(1) to provide that real property taxes for a redevelopment project are to be divided "for a period not to exceed fifteen years after the commencement of such rehabilitation, acquisition, or redevelopment,. . . ." (AM218, § 2). Resolution of this issue turns on the meaning of the language in art. VIII, § 2, authorizing the pledge of taxes levied on the valuation of property in the project area that are in excess of the assessed valuation of such property "for the year prior to such rehabilitation, acquisition, or redevelopment."
The Nebraska Supreme Court has recognized the following general rules governing the interpretation of constitutional provisions:
 The intent and understanding of [the] framers [of a constitutional provision] and the people who adopted it as expressed in the instrument is the main inquiry in construing it . . . The words of a constitutional provision will be interpreted and understood in their most natural and obvious meaning unless the subject indicates or the text suggests they are used in a technical sense. The court may *Page 4 
not supply any supposed omission, or add words to or take words from the provision as framed. It must be construed as a whole, and no part will be rejected as meaningless or surplusage, if it can be avoided. If the meaning is clear, the court will give to it the meaning that obviously would be accepted and understood by the layman. . . .It is permissible to consider the facts of history in determining the meaning of the language of the Constitution. . . .It is also appropriate and helpful to consider, in connection with the historical background, the evil and mischief attempted to be remedied, the objects sought to be accomplished, and the scope of the remedy its terms imply.
State ex rel. Spire v. Beermann, 235 Neb. 384, 389-90, 455 N.W.2d 749,752 (1990) (quoting State ex rel. State Railway Comm'n v. Ramsey,151 Neb. 333, 340-41, 37 N.W.2d 502, 508 (1949) (citations omitted)).
The reference to "the year prior to such rehabilitation, acquisition, or redevelopment" in art. VIII, § 12, does not incorporate any particular temporal requirement establishing when "such rehabilitation, acquisition, or redevelopment" occurs for purposes of determining the base or redevelopment project valuation. While "acquisition" contemplates a relatively fixed time, "rehabilitation" or "redevelopment" are acts which may commence and end at much different points in time. A rehabilitation or redevelopment project may not be completed within a single year, but may span more than one year from commencement to completion. Establishing either the date of execution of the project agreement or commencement of the project as the point in time at which the year prior to rehabilitation, acquisition, or redevelopment occurs for purposes of determining the redevelopment project or "base" value, as opposed to completion of the project, is not, in our opinion, inconsistent with art. VIII, § 12. Such an interpretation is reasonable and consistent with the ordinary meaning of the language employed in this constitutional provision. Accordingly, we conclude that the amendments to § 18-2147(1) proposed under LB 54 or AM 218 are not inconsistent with art. VIII, § 12.
We point out, however, that use of either the date of execution of the redevelopment project agreement or commencement of the redevelopment project as the effective date for determining the base or redevelopment project valuation for purposes of commencing the division of property taxes will, in the case of projects which take a year or more to complete, reduce the effective period for recapture of incremental tax revenues to less than fifteen years. In order to maximize the tax increment revenues available during the allowable fifteen year recapture period, establishing the effective date for division of taxes at some point after execution of the project agreement or commencement of the project may be appropriate to account for the time taken to complete rehabilitation or redevelopment. To that end, utilizing an effective date for division of taxes tied to completion of the project could help maximize the allowable time period for recapture. For projects with an increase in assessed valuation resulting from redevelopment over a period of years, however, establishing the effective date for division of taxes as the date of completion would result in a base value that would be higher than the value of the property prior to development for a multi-year *Page 5 
project, as the base value must be the assessed value for the previous year. We believe, however, that this interpretation is also permissible under art. VIII, § 12, and may be more consistent with the intent to permit use of the maximum amount of the fifteen year recapture period.
Very truly yours,
JON BRUNING Attorney General
L. Jay Bartel Assistant Attorney General
Approved:
_______________________________ Attorney General *Page 1